339 So.2d 328 (1976)
STATE of Louisiana
v.
Alfred HAYNES.
No. 58129
Supreme Court of Louisiana.
November 8, 1976.
*329 Vincent Wilkins, Jr., Appellate Counsel, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Ralph L. Roy, Asst. Dist. Atty., for plaintiff-appellee.
SANDERS, Chief Justice.
The East Baton Rouge Parish Grand Jury indicted Alfred Haynes with the murder of Lee Stewart in violation of LSA-R.S. 14:30. After trial, the jury returned a responsive verdict of guilty of manslaughter. On appeal, we reversed defendant's conviction, set aside his sentence and remanded his case for a new trial. State v. Haynes, La., 291 So.2d 771 (1974).
The defendant was then tried for manslaughter. LSA-R.S. 14:31. After the jury found him guilty of manslaughter, the court sentenced him to serve ten years at hard labor. He appeals his conviction and sentence, relying upon eleven assignments of error.
On the evening of September 22, 1971, following an argument with his wife, Alfred Haynes went to his sister-in-law's home to ask his wife, Vivian, to return home with him. Defendant became involved in a fight with his wife, his sister-in-law, and a niece. When the niece called for help, Lee Stewart came out of the house where he was living with defendant's sister-in-law and stabbed defendant in the shoulder *330 with a kitchen knife. Although Stewart went back toward the house, defendant pulled a gun from his belt and shot Stewart in the head, killing him.

ASSIGNMENT OF ERROR NO. 1
In Assignment of Error No. 1 defendant argues that the trial court erred in denying his motion to enjoin the empanelling of the jury venire. He contends that blacks were excluded from the petit jury venire in violation of his constitutional right to due process.
To support a challenge that blacks were systematically excluded from the jury venire, the defendant must show that the State has not complied with the statutory procedures for composition of a petit jury venire or has systematically excluded blacks from the system. State v. Brown, La., 319 So.2d 409 (1975).
The record discloses that eight of the twenty-seven prospective jurors questioned for jury service were black. The petit jury was selected by a random method in the same manner and from the comprehensive listing of the parish registered voters which was compiled by "color-blind" random procedures. In the instant case there has been no systematic exclusion in the selection of the jury venire shown. State v. Robinson, La., 302 So.2d 270 (1974).
The transcript of the voir dire examination indicates that the eight blacks were peremptorily challenged by the State. It was stipulated in the record that all twelve jurors empanelled were white. Although defendant's assignment of error complained specifically of the petit jury venire, the State's exercise of its peremptory challenges on black prospective jurors, nevertheless, will be treated.
In Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), the United States Supreme Court held that the fact that the prosecutor uses his peremptory challenges to strike every qualified member of the defendant's race from the jury panel does not constitute a denial of due process or equal protection, where there is no sufficient showing of a historical pattern of exclusion.
We have frequently held that the motive for the exercise of a peremptory challenge ordinarily is not subject to judicial review, State v. Carter, La., 301 So.2d 612 (1974), at least in the absence of evidence of systematic exclusion of black jurors from the justice system over a period of time. State v. Curry, La., 319 So.2d 917 (1975); State v. Gray, La., 285 So.2d 199 (1973).
The defendant has not shown a historical pattern of exclusion of blacks. We, therefore, find defendant's assignment of error without merit.

ASSIGNMENT OF ERROR NO. 2
In Assignment of Error No. 2 defendant argues that the trial judge erred in denying his motion to have the jury sequestered.
Although the defendant was originally tried for murder, the trial here is one for manslaughter. Louisiana Code of Criminal Procedure Article 791 requires mandatory jury sequestration only in capital cases. In all other cases it is within the discretion of the trial judge to sequester the jury prior to its charge.
The manslaughter verdict at the first trial had the effect of acquitting Haynes of murder, the capital offense with which he was charged. LSA-C.Cr.P. Art. 598. The subject of the present trial was a non-capital offense. That charge governs sequestration procedures and makes sequestration discretionary.
As there are no special circumstances warranting sequestration, the trial court did not abuse its discretion in denying defendant's motion for sequestration. State v. Wells, 168 La. 925, 123 So. 621 (1929); State v. Robichaux, 165 La. 497, 115 So. 728 (1928).
Assignment of Error No. 2 is without merit.

ASSIGNMENTS OF ERROR NOS. 3, 4, 5, AND 6
In brief, defendant consolidated these assignments of error as they all relate to the *331 prosecutor's alleged improper questioning of witnesses. Defendant specifically complains that the questions were leading, prejudicial and called for the opinions of witnesses.
During the State's examination of Vivian Haynes, defendant's wife, the following colloquy took place:
"Q. To what?
"A. I was holding on to her.
"Q. To your sister?
"A. Uh-huh.
"Q. You were holding on to your sister? Why were you doing that? Were you dizzy, faint, or what? Why were you holding on to your sister?
"A. Because I didn't want to go.
"Q. I know, butwas he pulling on you?
"A. Yeah.
"Q. Is that why you were holding on to your sister?"
In objecting to this line of questioning, defendant argues that the State was coaching its witness and that the leading questions are inadmissible when propounded to one's own witness.
LSA-R.S. 15:277 provides:
"A leading question is one which suggests to the witness the answer he is to deliver, and though framed in the alternative, is inadmissible when propounded to one's own witness, unless such witness be unwilling or hostile."
In State v. Fallon, La., 290 So.2d 273 (1974) we stated:
"Notwithstanding the general rule against leading questions, the matter is largely within the discretion of the trial court, which may allow such questions to be put to a witness when it deems such course necessary or advisable, or refuse to allow such questions where the circumstances do not seem to require such mode of examination; and in the absence of palpable abuse of discretion resulting in prejudice to the accused, reversible error cannot be predicated upon a ruling of the trial court allowing leading questions. State v. Hollingsworth, 160 La. 26, 106 So. 662 (1925). And to warrant consideration on review, an objection to a leading question should point out contemporaneously the harm and prejudice the accused will suffer by permitting the question. State v. Smith, 193 La. 665, 192 So. 92 (1939); State v. Antoine, 189 La. 619, 180 So. 465 (1938); McCormick's Handbook of the Law of Evidence § 6 (2d ed. 1972)."
The defendant did not claim prejudice at the time of his objection nor does he make a showing of prejudice in this Court. His assignment of error is, therefore, without merit.
In Assignment of Error No. 4, defendant complains that the State sought to elicit opinion testimony of Mrs. Haynes in asking:
"Q. How would youuhcould you describe what was going on between the three of you? How would you characterize that?"
The witness's answer, "We were struggling" clearly demonstrates that the question did not elicit opinion testimony. The witness properly testified as to facts within her knowledge.
This assignment of error is also without merit.
In Assignments of Error Nos. 5 and 6 defendant complains of leading and prejudicial questions propounded to witness Zadie Lindo. Although he objected to the entire line of questioning, the following questions are the specific bases of Assignments of Error Nos. 5 and 6, respectively:[1]

*332 "Q. Who was right behind Lee?
* * * * * *
"Q. and he's about reached the front door. And you have another man at arm's length behind him. That man must be traveling himself too, huh?
* * * * * *
"A. Well, was he?"
The first question was not a leading question. The second question merely restated testimony which the witness had given immediately before the question was asked. Although it may be considered a leading question, no prejudice resulted.
The witness possessed personal knowledge of the facts which the questions elicited. Thus, the trial court properly overruled defendant's objections.
Assignments of Error Nos. 5 and 6 are without merit.

ASSIGNMENT OF ERROR NO. 7
In Assignment of Error No. 7 defendant alleges that the court erred in overruling the following leading question propounded to Patricia Noble:
"Q. Well, now, that's not where she was living was it?"
Although this is the question cited in defendant's brief as objectionable, it appears that he objected to the entire line of questioning of which this question was a part.
"MR. BELL: Well, Judge, I'm going to objectuhyou're leading the witness.
"MR. ROY: I said, is that where she was living?
"MR. BELL: I'm asking for a ruling, Judge.
"THE COURT: Well, I'll overrule the objection.
"MR. BELL: Assign error.
"A. Ask it again?
"BY MR. ROY:
"Q. Is that where Vivianyou aunt, Vivianwas living at that time?
"A. No, she was living on Monroe Avenue.
"Q. Madison, like?
"A. Oh, Yeah; Madison.
"Q. I mean, I don't want to put words in your mouth
"MR. BELL: Well, that's exactly what he's doing, Judge."
While a review of the transcript does indicate that the State did resort to leading questions in several instances, there does not appear to have been any substantial prejudice to defendant or any abuse of discretion by the trial judge in controlling the examination. See State v. Peters, La., 302 So.2d 888 (1974); State v. Washington, La., 294 So.2d 794 (1974); State v. Vassel, La., 285 So.2d 221 (1973).
Assignment of Error No. 7 is without merit.

ASSIGNMENT OF ERROR NO. 8
In this assignment of error defendant complains that the trial court erred in allowing the introduction of his oral statement to Detective James Johnson over his objection. At trial, defendant objected to the introduction arguing that it was not an intelligent waiver in view of the special circumstances. In brief defendant argues these additional grounds for the inadmissibility of the statement: (1) absence of written waiver form; (2) not witnessed by anyone other than the testifying officer; (3) given while under the influence of possible medication to combat pain; and (4) not offered in its entirety.
Prior to the introduction of the statement, the State laid a predicate outside of the jury's presence. Detective Johnson testified *333 that he talked to defendant at the emergency room the night of the incident in question; he advised defendant of his rights; he did not threaten or otherwise intimidate defendant; and although defendant had been stabbed in the shoulder, he appeared to be rational and to understand what he was doing. The officer asked and received permission to speak to the defendant from the doctor, although he did not specifically ask if the defendant was taking medication. The defendant offers no evidence that he was in fact taking medication or unable to knowingly or intelligently waive his rights.
Initially, we note that there is no requirement that the waiver of an accused's Miranda rights be in writing. State v. Stevenson, La., 323 So.2d 762 (1975); State v. Lewis, La., 315 So.2d 626 (1975). Prior to the admission of a confession or inculpatory statement, the State must affirmatively establish that the requirements of Miranda v. Arizona have been met. 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); State v. Evans, La., 317 So.2d 168 (1975); State v. Skiffer, 253 La. 405, 218 So.2d 313 (1969).
Defendant's waiver of his Miranda rights, though oral, may be proved by competent evidence. State v. Stevenson, supra; State v. Lewis, supra. The testimony adduced at trial establishes that the defendant waived his rights knowingly and voluntarily.
Defendant's assertion that his statement was not offered in its entirety in compliance with LSA-R.S. 15:450 is also without merit. The defendant simply makes the allegation. He makes no showing to support this allegation. From a reading of the evidence adduced at trial, it appears that the statement was offered in its entirety.
Assignment of Error No. 8 is without merit.

ASSIGNMENTS OF ERROR NOS. 9 AND 11
Defendant groups these two assignments of error, alleging that they both relate to LSA-C.Cr.P. Art. 770(1) which provides:
"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;"
He argues in Assignment of Error No. 9 that the trial court erred in denying his motion for a mistrial based on the following: (1) the district attorney remarked that he had no objection if defense counsel solicited hearsay testimony during the cross examination of a witness, (2) the State's request for two instanter subpoenas in the jury's presence.
These two actions of which defendant complains are not included within the grounds for mandatory mistrial in Article 770.
However, assuming without deciding that the State's remarks were irrelevant or immaterial and prejudiced defendant, LSA-C.Cr.P. Art. 771 provides that the court shall admonish the jury to disregard the comment or remark. The article further provides that if the court is satisfied that an admonition is insufficient to assure the defendant a fair trial, upon defendant's motion, the court may grant a mistrial.
In the instant case the trial court did admonish the jury as follows:
"I'll instruct the jury that whatever the prosecutor says, or the Defense counsel says when they get up and make arguments or objections or motions is not evidencewhatever they think they're going to do or not do prove or not prove and what they state they think they're going to do by that is not evidence. You're not to consider such statements in your deliberations."
In Assignment of Error No. 11, defendant contends the trial court erred in failing to admonish the jury following his objection to *334 the State's alleged misleading statements of law made during its closing argument. The defendant objected, stating:
"I want to make an objection. Your Honorwhat the prosecutor is doing now is misleading the jury on theon theon Louisiana law on the amount of force you need touhquell a disturbance of this kind. Now, he knows full well that it was no weapon of violence and no licks being passed, and yet he's implying to the jury that Lee Edward Stewart had a right to use that knife on the defendant at this time. And I think that's misleading the jury, and II'd like for thatadmonish the Court to correct this erroneous impression of the law."
Following the defendant's objection, the court stated:
"Well, the Court can't comment on the evidence and theas was pointed out previouslythe arguments of the counsel for the State or for the Defense is not evidence and the inferences they may attempt to draw from the evidence is their own. If it appears to be reasonable and logical, you can accept it. If it doesn't and in accord with the facts as you see them, you can reject themor you can accept themjust depending on how they appear to you. And, Mr. Bell will have the opportunity to point out any apparent discrepancies that he feels or inconsistencies or inaccuracies that Mr. Roy may be guilty of, if he is."
Contrary to the defendant's allegation, the trial court did admonish the jury as requested. The denial of a motion for a mistrial is within the sound discretion of the trial court. In the absence of an abuse of discretion in denying a motion for a mistrial after an admonition has been given, that ruling will not be disturbed.
In light of the trial court's admonition following each of defendant's objections, if any prejudice resulted from the State's comments or actions, it was corrected. Assignments of Error Nos. 9 and 11 are without merit.

ASSIGNMENT OF ERROR NO. 10
In Assignment of Error No. 10 defendant complained that the trial court erred in denying his motion for a directed verdict. In brief, however, defendant does not treat the denial of this motion. It will, therefore, not be considered. See State v. Edwards, 261 La. 1014, 261 So.2d 649 (1972).
In his brief defendant argues only the denial of his motion for a mistrial. This motion was based upon the State's offering and then withdrawing the offer to introduce the tape recording of defendant's confession.
It is noted that defense counsel initially objected to the introduction of the tape. Further, there was no testimony as to the contents of the tape. In conclusion, we find that no prejudice resulted from the offer and the withdrawal of the offer of evidence.
Assignment of Error No. 10 is without merit.
For the reasons assigned, the conviction and sentence are affirmed.
TATE, J., assigns additional concurring reasons.
DENNIS, J., concurs with reasons.
TATE, Justice (concurring).
By Assignment One, the defendant complains of the refusal of the trial court to enjoin the state's use of peremptory challenges to exclude any prospective black juror, simply on the ground of his race, in the trial of this black defendant. The apparent thrust of the motion to enjoin is a contention that the assistant district attorney in question has consistently and systematically excluded black jurors from the trial of black defendants.
In support of its contention, the defendant simply introduced the census reports showing the proportion of blacks in the population. I agree with the majority that this does not sufficiently prove systematic exclusion of blacks by use of peremptory challenges, or even raise a prima facie case as to this issue.
*335 However, if indeed it were proved that this assistant district attorney has consistently exercised peremptory challenges so as to exclude any black juror from participating in the trial of any black defendant, I would find merit to an assignment of error based upon the ground urged. See: State v. Gray, 285 So.2d 199 (La.1973); Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); Barham, The Peremptory Challenge: A Prosecutorial Stratagem to Circumvent Due Process, 1 Southern Univ.L.Rev. 16 (1974). I note this, in view of the colloquy at the trial (which indicates a prosecutorial misunderstanding of the constitutional principles applicable), in order to avert, if possible, the occasion of reversible error in the future.
DENNIS, Justice (concurring).
I concur in the majority's treatment of Assignment of Error No. 1 because defendant has not demonstrated a systematic exclusion of blacks from jury panels by the State's use of peremptory challenges in this case.
Nevertheless, I note with some concern the frequent recurrence of the identical complaint in cases appealed from East Baton Rouge Parish. Since 1972 there have been eight cases from that district, including the present appeal, in which defendants alleged that the State exercised its peremptory challenges to exclude black verniremen from the petit jury. See, State v. Reed, 324 So.2d 373 (La.1976); State v. Curry, 319 So.2d 917 (La.1975); State v. Carter, 301 So.2d 612 (La.1974); State v. Veal, 296 So.2d 262 (La.1974); State v. Melton, 296 So.2d 280 (La.1974); State v. McAllister, 285 So.2d 197 (La.1973) (six blacks peremptorily challenged by the State but one black venireman accepted); State v. Smith, 263 La. 75, 267 So.2d 200 (1972).
Because these cases represent only a small number of those tried in East Baton Rouge Parish, I cannot say that this record alone indicates an historical system of discriminatory exclusion. However, these cases may trace the outlines of a pattern of exclusion, and if it can be demonstrated in a future case that the practice complained of has not been restricted to isolated instances, then the State should be required to establish that the exclusion of blacks is rooted in some other cause than racial discrimination. For, to exercise peremptory challenges solely on the basis of race without regard to legitimate trial-related objectives is to pervert the purpose of and abuse the broad discretion inherent in that procedure. See, Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965).
I respectfully concur.
NOTES
[1] These two questions form part of the following line of questioning which the defendant also found objectionable:

"Q. Now, why were you running?
"A. When people in a fight or something, they just trying to protect everything; that's all.
"Q. I know, but you didn't run when all that scuffling and shoving and stool-swinging was going on, did you?
"A. What's that?
"Q. You weren't running then, were you?
"A. Running how? What was two thingswhat was the stool-swingthe gun?
"Q. Well, youyou say
"A. I would have been right up there myself, I reckin, if my littles sister hadn't of pulled me down, because I'm usually do that over things
"Q. Well, I mean, maybeLee may have been sitting up there, huh?
"A. Yeah; Just aboutI wished he was
"Q. Huh?
"A.  `cause I'm tiredI sure am tired up here.
"Q. Who was right behind Lee?
"A. Alfred."