343 So.2d 155 (1977)
STATE of Louisiana
v.
Lawrence JOHNSON.
No. 58514.
Supreme Court of Louisiana.
February 28, 1977.
*158 R. Boatner Howell, Jr., Sumpter B. Davis, III, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Alton T. Moran, Marilyn C. Castle, Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
On August 8, 1975 defendant was charged by bill of information with the April 11 armed robbery of Harold Rhodus. R.S. 14:64. Defendant was arraigned on August 18, 1975 and pleaded not guilty to the charge. On October 29, 1975, the date set for trial, the assistant district attorney amended the bill of information to include four additional counts of armed robbery. Defendant was rearraigned on November 12, pleaded not guilty to all five counts, and the matter was reassigned for trial on December 3, 1975. On December 3 the trial date was postponed to January 5, 1976.
The hearing on defendant's motion to suppress his confession, originally set for December 19, 1975, was postponed until January 16, 1976, on the district attorney's motion. On December 30, 1975 defense counsel moved for a continuance until some date after January 16, 1976, the date scheduled for the hearing on defendant's motion to suppress; at the December 31 hearing on this motion the State announced that it had abandoned its intention to use defendant's confession, whereupon the court ruled that the case would proceed to trial as scheduled on January 5, 1976.
On the morning of trial the bill of information was again amended to delete two counts of armed robbery, and defendant was tried on the following three counts:
Count I: the April 11, 1975 armed robbery of Harold Rhodus
Count II: the April 13, 1975 armed robbery of Harold Rhodus
Count III: the April 19, 1975 armed robbery of Rosella Smith
At the conclusion of the three day trial on January 7, 1976 defendant was found guilty of each count by an eleven to one verdict of the jury. On February 4, 1976 defendant was sentenced to serve fifteen, twenty-five and fifty years at hard labor on Counts I, II and III, respectively, with the sentences running consecutively. On appeal defendant urges eighteen of his thirtyone assignments of error, consolidated into twelve arguments.
Between 7:30 and 8:00 p.m. on April 11, 1975 a man entered the Seven-Eleven Store on North Foster Drive in Baton Rouge, withdrew a revolver from his jacket and demanded money of the two store employees, Cynthia Breazeale and Harold Rhodus. As instructed, Breazeale and Rhodus removed the cash (approximately $150) from the two registers, placed it in a paper sack which was given to defendant, and lay down on the floor until after he was gone. The police were summoned and given a description of the man's clothing: he wore burgundy pants, a dark jacket and a yellow and brown striped knit cap.
*159 On the morning of April 13, 1975 the same man, armed with a revolver, again entered the Seven-Eleven Store and ordered the same store employees to place the cash from the registers ($120-$130) in a paper bag and lie on the floor for five minutes after he had gone. On this occasion the robber wore a brown jacket, dark blue pants and a yellow hat liner.
Rhodus made a positive in-court identification of defendant as the perpetrator of both robberies; Breazeale stated that defendant resembled the robber.
At about 1:00 p.m. on April 19, 1975 Kean's Laundry, located next door to the Seven-Eleven on North Foster Drive, was similarly victimized. A man entered the laundry, waited until it was cleared of customers, then drew a gun and ordered the counter clerk, Rosella Smith, to give him the cash from the drawer. She was told to remain in the back of the store for ten minutes after he left. At trial Smith positively identified defendant as the robber.
On April 22, 1975 defendant was arrested at his home, several blocks from the Seven-Eleven Store and Kean's Laundry. A warrantless search of his room, to which his wife consented, produced a pair of burgundy pants, a pair of navy blue pants, a brown jacket and a knit cap. Breazeale and Rhodus testified that these articles resembled the robber's clothing.
Defendant took the stand at trial and testified that he did not own a gun and had not committed the robberies. Defendant's wife, Joanne Johnson, stated that she had been estranged from defendant for several months prior to his arrest, but that she had visited him the day before he was arrested, bringing with her the knit cap which police retrieved from defendant's room.

Assignment of Error No. 1
By this assignment defendant complains of the trial court's denial of his December 30 and December 31 motions for continuance.
Because the hearing on defendant's motion to suppress was postponed from December 19, 1975 to January 16, 1976, defense counsel assumed that the trial, scheduled for January 5, would be continued until after the admissibility of defendant's confession had been determined. Counsel alleges that this assumption was strengthened by the assistant district attorney's representations that the trial would undoubtedly be continued.
Nevertheless, on December 30 defense counsel filed a motion for continuance alleging that, based on counsel's conclusion that the trial date would be reassigned, the defense witnesses had been told to disregard subpoenas issued for January 5 and co-counsel for defendant had planned to be out of state from January 3 to January 10. A hearing was held on the motion the following day, and defense counsel professed surprise when the State announced it would not use the confession (the subject of the motion to suppress). The court ruled that the case would proceed to trial on January 5. A second motion for continuance filed later that day asserted that the district attorney's last minute change of tactic "border[ed] on trickery," and that there was not sufficient time remaining before trial for the preparation of a defense. This motion was also denied.
Defense counsel again reurged his motions on the morning of trial; his arguments that he had been deceived by the district attorney and denied adequate time to prepare for trial were again rejected.
C.Cr.P. 712 provides:
"A motion for continuance, if timely filed, may be granted, in the discretion of the court, in any case if there is good ground therefor."
The trial court did not abuse its discretion in concluding that a continuance was not warranted. Defense counsel's argument in his motions, at trial and in brief, focus upon his expectation that the trial would be delayed, the district attorney's contribution to that expectation, and the short space of time remaining before trial (with the New Year's Eve weekend intervening; when he finally realized that there would be no continuance. Although counsel's interest in *160 the outcome of the motion to suppress is understandable, there is no adequate explanation of his postponement of his preparation for trial until after the resolution of this matter; several weeks had passed during which there was time for trial preparation. Additionally, counsel has nowhere demonstrated that the defense was actually prejudiced by the court's refusal to grant a continuance. All defense witnesses were present on the morning of trial and counsel conceded that he had previously interviewed each of them, but argued that this had not been done as recently as he would have liked. However, he does not indicate how the two defense witnesses' testimony might have differed or whether additional testimony might have been available had he been given an opportunity to confer with his witnesses just prior to trial. See State v. Brown, 322 So.2d 211 (La.1975).
Finally, it should be noted that the State's decision not to use defendant's confession carried with it an attendant advantage to the defense: the abandonment of two of the charges pending against defendant, with a corresponding lessening of defense counsel's responsibilities.
It is well settled that the trial curt's decision to deny a continuance will not be disturbed on appeal in the absence of a clear abuse of discretion. State v. Jarrow, 331 So.2d 1 (La.1976). There was no abuse of discretion here, and this assignment lacks merit.

Assignments of Error Nos. 2 and 7
Defendant contends that the court erred in refusing to permit a "look-alike witness" to sit with him at the counsel table.
With the exception of a few unremarkable articles of clothing, the only evidence linking defendant with the crimes charged was the identification of him by the eyewitnesses. Defendant asserts that several of the State's witnesses[1] mistakenly selected Kenneth Jackson from a pretrial line-up as the perpetrator of the robberies. Hence, defendant requested that Kenneth Jackson be seated beside him at trial in order to test the reliability of the in-court identifications. This request was denied, and when defense counsel declared that Jackson would offer limited testimony, the court additionally ruled that he would be placed under the rule of sequestration except in connection with identification testimony. Defendant does not challenge the latter ruling.
Defendant claims that the line-up was tainted by the mistaken identification of Jackson as the robber by several witnesses. To the contrary, the identification of Jackson indicates that the line-up procedure was not impermissibly suggestive, since it clearly did not label defendant as the correct choice to be made by the witnesses.
More persuasive is defendant's argument that the in-court identification procedure was suggestive. He claims that "the mere occupation of the defendant's chair at the counsel table has identifying properties strongly suggesting to the witness that the person occupying that position is the perpetrator of the crime." It is true that the conspicuous display of the defendant alone in the accusatorial spotlight might dispel the doubts of some uncertain witnesses. However, ". . . this circumstance does not indicate or unduly suggest to the witness that defendant committed the crime, only that he is charged with its commission." State v. Daniels, 326 So.2d 340, 343 (La.1976). In Daniels, supra, and State v. Brooks, 294 So.2d 503 (La. 1974), the court suggested that counsel's right to cross-examine and question the weight to be given identification testimony was sufficient to remedy any suggestion inherent in the incourt identification process. State v. Boettcher, 338 So.2d 1356 (La.1976).
State v. Boettcher, supra, and State v. Jackson, 338 So.2d 1363 (La.1976), held *161 that a trial judge has the discretion to grant an accused's request for a pretrial line-up, but did not alter the rule that a defendant is not entitled to an in-court lineup. The decision whether such a protective measure is required is entrusted to the trial court's discretion:
"The trial court likewise has broad discretion to order protective measures other than a pretrial line-up, such as by seating the defendant elsewhere than in the normal place of an accused in the courtroom." State v. Boettcher, 338 So.2d 1356, 1361.
There was no undue suggestion in the in-court identification. Although one witness had told defense counsel before trial she was not sure of defendant's identity, her conflicting testimony was fully aired before the jury by cross-examination.
There is no merit in these assignments.

Assignments of Error Nos. 5 and 6
By these assignments defendant argues that he was entitled to a mistrial, as requested, when the court made reference to the fact that defendant had been incarcerated.
When a prospective juror indicated on voir dire that she had previously discussed the case with others, the court inquired: "Have you discussed the matter of this man being in jail with anyone?" and, "Do you know what he's in jail for?" Defense counsel moved for a mistrial which was refused. The court later instructed the jury:
"At this time I admonish you to disregard that comment [that defendant was in jail], or that remark, made by me as being irrelevant and immaterial, and I instruct you not to allow that to create any prejudice nor should you draw any inference from the fact that defendant is in jail and unable to post bond."
Defendant claims that an admonition was insufficient to cure the prejudice which he suffered as a result of the court's remarks.
First, defendant argues that the court's remarks were analogous to the district attorney's question in State v. Green, 315 So.2d 763 (La.1975), "Was that before or after he [defendant] got out of the penitentiary?", which this court held mandated a mistrial. But in Green the question referred indirectly to another crime committed by the defendant as to which evidence was not admissible, a reference clearly prohibited by C.Cr.P. 770(2). Here, it was clear from the context of the judge's comments and from his admonition that the reference was to defendant's incarceration in connection with the present offense. The analogy to Green is poorly taken.
Next, defendant argues that the same principles which dictate that an accused not be tried in prison uniform also prohibit reference to his imprisonment. In State v. Tennant, 262 La. 941, 265 So.2d 230, 234 (1972), cited by defendant, the court held that generally it infringes upon the presumption of innocence to try a man in prison clothes and that "he may, therefore, require that he be tried in civilian clothing, free of the stigma attached to prison garb." If it is improper to present a defendant dressed in prison clothing to the jury, defendant contends, it is equally improper to tell the jury that defendant is presently incarcerated. There is no merit to this argument. An accused has the right to dress in civilian clothing at trial because prison attire might unduly connote guilt. The remarks complained of in the instant case merely drew attention to a prominent fact of the trialthat defendant had been formally accused of the crime for which he was being tried. Although the fact of accusation may be suggestive of guilt to some jurors, as the State argues in brief, it is an incident of trial from which the jurors simply cannot be insulated. The court's admonition to the jury in this case, that it should not be prejudiced by the fact of defendant's incarceration, was the most that could be done to counteract any latent bias.
Consequently, there is no merit in these assignments of error.

Assignment of Error No. 8
Defendant urges that the court improperly refused to grant a mistrial when it *162 was established that the State had attempted to intimidate a defense witness.
As noted above, Kenneth Jackson was offered as a "look-alike witness" to test reliability of the eyewitnesses' in-court identifications. Jackson testified out of the presence of the jury that the district attorney had threatened him with prosecution for the crimes charged against defendant if the witnesses identified him, instead of defendant, as the robber. Defense counsel moved for a mistrial, which was denied.
The State's threat was clearly improper, since it was cognizant of the fact that Jackson had been incarcerated in parish prison at the time of the robberies. Nevertheless, defendant made no effort to call Jackson as a witness during trial. It was stipulated that Jackson was in jail at the time of the robberies. Defendant has demonstrated no prejudice. Defense counsel was permitted to have Jackson stand, during cross-examination of the State's witness, before the jury.
This assignment is without merit.

Assignment of Error No. 9
Defense counsel alleges that the court erred in restricting his opening statement to a discussion of the charge and the evidence and in refusing to allow comment on the State's use of its peremptory challenges.
Defendant argues that his due process rights were violated by the State's use of its peremptory challenges to exclude blacks and secure a racially unbalanced jury. Under the circumstances counsel felt compelled to caution the predominantly white jury at the outset not to be influenced by racial bias. However, when he embarked upon a discussion of the State's peremptory challenges, he was interrupted by the prosecutor's objection and prevented from continuing.
Even where the State uses its peremptory challenges to exclude every black prospective juror, there is no denial of due process absent a showing of an historical pattern of exclusion. State v. Haynes, 339 So.2d 328 (La.1976). But see, Justice Dennis' concurring opinion noting the frequency of complaints that blacks are excluded from jury panels in East Baton Rouge Parish. Defendant has not made the requisite showing of a systematic exclusion of blacks from the East Baton Rouge Parish jury panels over a period of time. Additionally, this argument is not properly presented for the court's review because defendant did not assign as error the State's allegedly discriminatory exercise of its peremptory challenges. C.Cr.P. 844 and 921.
Furthermore, the court correctly ruled that defense counsel could not address the issue in his opening statement. When defense counsel elects to make an opening statement, he must confine his remarks to an explanation of the nature of the defense and the evidence by which he expects to establish it. State v. Burnette, 337 So.2d 1096, 1098 (La.1976).
This assignment lacks merit.

Assignment of Error No. 12
Defendant contends that the court erred in failing to declare a mistrial when it was discovered that a State witness had violated the witness sequestration order.
Harold Rhodus, the victim of two of the robberies, admitted on cross-examination that he had discussed with his employer a newspaper account of the trial:
"I told him [Rhodus' employer] we had the Jury, and he said, `Well, I understand they're going to bring a fellow that looks alike in the jury room,' and that was as far as the discussion went."
The witness' exposure to the newspaper article allegedly violated the sequestration order imposed by the court the day before.
C.Cr.P. 764 states:
"Upon its own motion the court may, and upon request of the state or the defendant the court shall, order that the witnesses be excluded from the courtroom or from where they can see or hear the proceedings and refrain from discussing the facts of the case or the testimony of any witness with anyone other than the *163 district attorney or defense counsel. The court may modify its order in the interest of justice."
The purpose of the article is to prevent the witnesses being influenced by prior testimony and to strengthen the role of cross-examination in developing the facts. Even when the rule of sequestration has been violated, if its purpose has not been thwarted the trial judge may, in his discretion, refuse to disqualify the errant witness or to declare a mistrial. State v. Batts, 324 So.2d 415 (La.1975).
No prejudice resulted to defendant from the violation of the sequestration order which occurred in this instance. Rhodus' testimony indicates that he learned nothing more from his improper conversation than that defendant was to present a look-alike witness. Surprise was not a factor in the look-alike test; defense counsel merely produced Jackson on cross-examination and asked Rhodus, "Can you tell me which one it was?"
The court did not abuse its discretion in refusing to grant a mistrial.

Assignment of Error No. 13
Defendant argues that the court erred in overruling counsel's objections to leading questions propounded by the prosecutor to his own witness.
On direct examination, Cynthia Breazeale identified defendant as the robber, described the clothes worn in the robbery and identified the State's exhibits as resembling the robber's clothing. Subsequently, the prosecutor requested a more definite statement of her by asking the following questions:
"Is there anything about the looks of that man [defendant]the way that he looks, is there anything about his facial features, uh, hair, height, anything regarding his description that would cause you to say that could not be the man [robber]?"
" . . . Is there anything, you know pants can be made in a thousand different ways, anything about these pants that would cause you to think that these would not be the pants [worn by the robber]?"
Defense counsel objected to both questions as being leading, but was overruled on both objections.
R.S. 15:277 defines a leading question as "one which suggests to the witness the answer he is to deliver" and prohibits asking such a question of one's own witness.
Although of course everyone knew what the witness' answers were supposed to be, the questions in themselves do not suggest answers, but allow a yes or no response. They were not leading.
This assignment lacks merit.

Assignment of Error No. 16
Defendant assigns as error the trial judge's ruling admitting into evidence a hat liner found near the scene of the April 13 robbery.
When the police were summoned after the April 13 robbery, the victim, Harold Rhodus, pointed them in the direction the robber had fled. An investigation of the area revealed a yellow hat liner resembling that which the victims had said the robber wore. This item was introduced in evidence over defendant's objection that it was irrelevant.
Relevant evidence is "that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent." R.S. 15:441. To be admissible evidence must be "relevant to the material issue." R.S. 15:435; State v. Major, 318 So.2d 19, 22 (La.1975).
Here, the State established some connexity between the hat liner and the robber but the State did not show that it was relevant to any material issue in the case. Nevertheless, the trial court has broad discretion in this area, and because defendant has not demonstrated that he was prejudiced by the court's ruling, the error, if any, was harmless. See State v. *164 Gallow, 338 So.2d 920 (La.1976) and State v. Bird, 302 So.2d 589 (La.1974).
This assignment is without merit.

Assignments of Error Nos. 20, 21, 22 and 23
These assignments relate to the conduct of the hearing on defendant's motion to suppress evidence and to the court's denial of that motion. The motion sought to suppress articles of clothing, previously alluded to, which were seized from defendant's home following his arrest. Defense counsel did not learn of the existence of this evidence until after the trial had begun, but the court permitted counsel to enter his motion on the second day of trial and interrupted the proceedings for a hearing on the motion.
Sergeants Gill and Alford testified that an unidentified informant's tip led them to defendant's room in a boarding house on North 47th Street in Baton Rouge. Gill claimed that both the informant and the owner of the boarding house had told him that defendant lived there with his wife. When the officers arrived at defendant's residence at about 6:45 a.m. on April 22 they found defendant's wife, Joanne, there alone and they left. Shortly thereafter they returned, saw defendant outside, and arrested him. They then returned to defendant's apartment, finding the door open and the room empty. From the door they saw a jacket, two pairs of pants and a knit cap. Defendant's wife, who had apparently gone next door after the first visit by the police, came back and, at the officers' request, signed a waiver form permitting them to conduct a warrantless search of the room.
Joanne Johnson testified that she had signed the waiver form after the officers threatened to take her down town and put her child in a foster home. Additionally, she claimed that she and defendant had not lived together for several months until the night before defendant's arrest, when she went by for a visit and stayed for the night.
Defendant and his mother also corroborated Mrs. Johnson's statement that she and defendant had been estranged for several months.
Assignments of Error Nos. 20 and 21 relate to the court's ruling permitting the State to recall Sergeant Gill as a witness in order to inquire whether he had seen the articles seized before entering defendant's room. Gill responded that he had. Defendant argues that it was highly improper to allow the State to recall its witness after he had already completed his testimony and thus interject a "plain view" issue into the proceedings.
The recall of Sergeant Gill may have been somewhat irregular, but the entire hearing was irregular, falling as it did in the middle of the trial. The testimony belatedly sought from Gill when he was recalled had been given by him only moments before on direct examination at trial. Further, Sergeant Alford testified at the hearing prior to Gill's recall that he had seen the clothing from the doorway, and it was through an apparent oversight that Gill was not initially examined as to this matter.
Even at trial, where the order of evidence is more formally regulated, the court may in its discretion permit the introduction, of additional evidence after the State's rebuttal and prior to argument. C.Cr.P. 765. The court had the authority to permit Gill's recall and this authority was properly exercised here.
In Assignments of Error Nos. 22 and 23 defendant complains of the court's denial of his motion to suppress. He argues that he has standing to challenge the search under Article I, § 5 of the Louisiana Constitution of 1974. He further argues that the search of his room cannot be justified under any theory: it was not incident to a lawful arrest, since the arrest occurred outside, and the search was not confined to the immediate vicinity of the arrest; that it was not a valid consent search since Mrs. Johnson did not live with defendant and therefore could not authorize the police to search his room; and, finally, if Mrs. Johnson was capable of consenting, her consent was not valid here because it was the product of coercion.
*165 The State argues that the search was legal by virtue of Mrs. Johnson's consent.
Essentially these assignments require the court to assess the credibility of the witnesses.
Defendant concedes that Joanne Johnson is his wife, but argues that they had been estranged for many months with the exception of the night preceding his arrest. Sergeant Gill was the only State witness to refute this testimony, stating that he had learned from defendant's landlady and from his confidential informant that defendant and Joanne Johnson resided together, testimony which was contradicted by the landlady.
The State contends that even if Mrs. Johnson were not living with defendant she could validly consent to the search of his room by virtue of her status as his wife. In United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), the Supreme Court held that a third party's consent to a warrantless search is only valid where that party possesses common authority over or other sufficient relationship to the premises. The court observed:
"Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third consent does not rest upon the law of property, with its attendant historical and legal refinements, . . . but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." 94 S.Ct. at 993, fn. 7.
In State v. Dupuy, 319 So.2d 299 (La. 1975), this court similarly held that the consent of a spouse to search "jointly owned and controlled premises permits a warrantless search." There was sufficient evidence of joint control to support the finding of the trial judge. Defendant's wife had the authority to consent to the search of defendant's room. We agree that it was neither a "plain view" search, nor a search incidental to an arrest.
It is argued next that if Mrs. Johnson's consent was involuntary, it will not support the search of defendant's room. She stated that she had been threatened with the loss of her child and imprisonment if she did not sign the waiver form. The police were never asked whether they had threatened her in any way. However, her statements were impliedly refuted by Sergeant Gill's contrary account of their encounter:
"Our other conversation with her [when her consent was obtained] went like this: We told her that we wanted to search the room for money and weapons and clothing because Lawrence had been arrested for armed robbery. I told her I didn't have a search warrant but she could sign a search waiver for me. I produced this form here. She signed the search waiver and I searched the room."
There is no merit to these assignments.

Assignment of Error No. 26
Defendant claims that the court committed reversible error when it refused to permit testimony as to his good character.
Defense counsel asked defendant, "When was the last job that you had?" The State objected to the defendant's attempt to establish his good character and before the court could rule, defense counsel interjected, "Well, I know about his character. I think it's good and I ought to be able to. . . " The State then objected to counsel's testifying on his client's behalf, and the court cautioned defense counsel, "Your stating to the Jury that you think the man's character is good is out of place, and I'll instruct the Jury to disregard it and advise you not to do it again." The original objection was never ruled upon, and the extent of the court's intervention was to instruct defense counsel that it was improper for him to testify as to defendant's character.
*166 The court's ruling was correct; defendant was never barred from introducing proper evidence of his good character.
This assignment lacks merit.

Assignments of Error Nos. 29, 30 and 31
Finally, defense counsel claims that the court erred in overruling his motion for a mistrial based upon the State's continued interruption of his closing argument with objections.
There were only four objections during counsel's lengthy summation. Counsel does not claim that they were ill-founded, as several of them clearly were not, but that they were disruptive and distorted the presentation of the defense to the jury. None of the interruptions was for a serious objection, and some were merely contentions, and were overruled by the trial court. Such tactics should not be condoned. However, the record does not demonstrate any prejudice to defendant.
The defendant also argues that he was entitled to a mistrial when the court chuckled at hearing one of his requests. Defendant had just moved for a mistrial based upon the State's interruptions of his argument and upon the court's instructions to the jury that it was to be the sole judge of what facts had been established. (Defense counsel had attempted to give them his own version and the State had objected). It does not appear that the court's "amused chuckle" was anything but good-natured and clearly was not intended to demean counsel.
Defense counsel then moved for a mistrial on the ground that defendant had been denied effective assistance of counsel. The record proves otherwise.
These assignments are without merit.
The conviction and sentence are affirmed.
DENNIS, J., concurs.
NOTES
[1] It is unclear who these witnesses were. Cynthia Breazeale did not attend a line-up; Rosella Smith testified that she positively identified defendant at the line-up; Harold Rhodus stated that he saw defendant at the line-up, but did not allege that he identified him there. The mistaken identifications were probably made by witnesses to the robberies which the State decided not to prosecute.