371 So.2d 751 (1979)
STATE of Louisiana
v.
Andrew K. BROWN.
No. 63210.
Supreme Court of Louisiana.
May 21, 1979.
Rehearing Denied June 25, 1979.[*]
C. Frank Holthaus, Boren, Holthaus & Perez, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Ralph Roy, Kay Kirkpatrick, Asst. Dist. Attys., for plaintiff-appellee.
CALOGERO, Justice.
The major issue presented in this appeal is whether the trial judge erred when he refused to grant a defense motion to quash the selected jury panel based upon the prosecution's systematic exclusion of blacks from this jury and prior petit juries.
Defendant, Andrew K. Brown, was found guilty of attempted manslaughter, guilty of possession of a firearm after having been convicted of a felony and guilty of carrying a concealed weapon after having been convicted of a felony; the jury returned a not guilty verdict in connection with a charge of attempted murder. The charges arose out of Brown's possession and use of a gun on October 26, 1976, when he allegedly fired numerous shots, striking a woman with whom he had formerly lived and her female companion. Brown was sentenced as an habitual offender to prison terms of ten years, five years and ten years respectively, the latter two sentences to be served without benefit of parole, probation or suspension of sentence (as prescribed by R.S. 14:95.1); all the sentences were ordered to run consecutively.
*752 Defendant, a black man, was convicted by an all white twelve member jury. In the process of selecting the jury, the assistant district attorney, Mr. Ralph Roy, employed only five peremptory challenges, all against blacks, thereby securing the all white jury which tried this case. Before overruling defendant's motion to quash, the trial judge allowed defense counsel an opportunity to prove systematic exclusion. The defense produced the testimony of two attorneys. An East Baton Rouge Parish attorney practicing with the Public Defender's Office stated that in a case he recently tried against Mr. Roy, State v. Willie Joe Washington (No. 63,037 on our docket, argued March 8, 1979), Mr. Roy used his twelve peremptory challenges to exclude the first twelve blacks called on voir dire examination. In that case a thirteenth black remaining on the petit jury venire after the state had exhausted all of its peremptory challenges was selected. No state peremptory challenges were used to exclude whites.
Another Baton Rouge attorney testified it appeared to him that in recent cases he had tried against Mr. Roy that blacks were often peremptorily challenged. He could not recall Mr. Roy exercising peremptory challenges against whites in recent cases. In his last trial against Mr. Roy involving a black defendant, there were no blacks on the jury although there were blacks on the venire; Mr. Roy exercised peremptory challenges against the blacks. In another recent trial in which this witness participated which involved a white defendant, this same prosecutor also exercised his peremptory challenges against blacks in the venire with the result that no blacks served on the jury. The attorney testified that he did not exercise peremptory challenges against blacks in either trial. Asked if he had any opinion with respect to Mr. Roy's exclusion of blacks from the jury the attorney responded, ". . . [M]y opinion would be that . . . it's systematic exclusion."
After a short cross-examination of this attorney by the prosecutor the court noted that the last jury trial before it was a negligent homicide case in which both defendant and victim were black and that on the six person jury two blacks had served. The assistant district attorney in that case, however, was not the same as in the case at bar. Later in the course of the trial, while the jury was deliberating, further evidence regarding the composition of other East Baton Rouge Parish juries was furnished defendant's counsel by the trial judge and read into the record. In one case, involving the trial of one Elijah Pickett before a six member jury, three blacks and three whites, the prosecution was conducted by Mr. Roy. There is no record indication of the nature of the case, the race of the defendant or other particulars. Further information furnished involved the Washington case to which this opinion has previously alluded and the previously noted negligent homicide case tried by a six person jury including two blacks in which the state was represented by a different prosecutor. The prosecutor, Mr. Roy, did not testify in this case, nor did he make any statement for the record concerning whether he had been accustomed to systematically excluding blacks from the petit jury panels.[1]
The foregoing fully summarizes the record in the instant case. However, also pertinent to this issue are the facts noted in a concurrence to State v. Haynes, 339 So.2d 328 (La.1976). In that case, decided on November 8, 1976, we affirmed a conviction wherein a complaint was made of systematic exclusion of blacks from the petit jury through the use of peremptory challenges *753 by the same prosecutor who tried this case. Two members of this Court concurred in connection with this issue, one of whom, noting among other things concern for the frequent recurrence of the identical complaint in many other cases appealed from East Baton Rouge Parish, stated:
"Since 1972 there have been eight cases from that district, including the present appeal, in which defendants alleged that the State exercised its peremptory challenges to exclude black veniremen from the petit jury. See, State v. Reed, 324 So.2d 373 (La.1976); State v. Curry, 319 So.2d 917 (La.1975); State v. Carter, 301 So.2d 612 (La.1974); State v. Veal, 296 So.2d 262 (La.1974); State v. Melton, 296 So.2d 280 (La.1974); State v. McAllister, 285 So.2d 197 (La.1973) (six blacks peremptorily challenged by the State but one black venireman accepted); State v. Smith, 263 La. 75, 267 So.2d 900 (1972).
Because these cases represent only a small number of those tried in East Baton Rouge Parish, I cannot say that this record alone indicates an historical system of discriminatory exclusion. However, these cases may trace the outlines of a pattern of exclusion, and if it can be demonstrated in a future case that the practice complained of has not been restricted to isolated instances, then the State should be required to establish that the exclusion of blacks is rooted in some other cause than racial discrimination. For, to exercise peremptory challenges solely on the basis of race without regard to legitimate trial-related objectives is to pervert the purpose of and abuse the broad discretion inherent in that procedure. See, Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965).
Three of the seven cases to which the foregoing portion of the concurring opinion in Haynes alluded were tried by the same prosecutor involved in this case. Since that decision in Haynes, we have reviewed no less than four East Baton Rouge Parish convictions involving this issue[2] (in addition to this case and State v. Washington, supra), in two of which the prosecutor was the same as in the instant case. It appears that the caution expressed by the concurring justice in Haynes has not been heeded.
The majority of this Court has held that a defendant is not denied equal protection when the state uses peremptory challenges to exclude blacks unless there is a systematic exclusion over a period of time; we impose upon the defendant the burden of establishing a prima facie showing of such exclusion. Once a defendant has done so, the state bears the burden of showing that there was no discrimination. State v. Bias, 354 So.2d 1330 (La.1978). In Bias, the Court noted its adherence to the test announced in Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 959 (1965) in determining whether there was a systematic exclusion. In Swain, the United States Supreme Court held that a showing by the defense that peremptory challenges were used to exclude members of a minority in a particular case is not sufficient to establish a violation of the Fourteenth Amendment's Equal Protection Clause. However, where defendant can show a systematic exclusion of the minority by the state over a period of time through its use of peremptory challenges a constitutional question is presented. Swain implies that defendant must demonstrate that the prosecutor continually and consciously uses peremptory challenges to exclude blacks because of their race, requiring that the record show "with [some] acceptable degree of clarity . . . when, how often, and under what circumstances the prosecutor alone has been responsible for striking [the minority]." 380 U.S. at 224, 85 S.Ct. at 838.
Heretofore, less than a majority of this Court has subscribed to views expressed by Justice Dennis in his concurrence in State v. Eames, 365 So.2d 1361 (La. 1979),[3] wherein it is observed that the *754 Swain case has been the subject of extensive criticism because it "plac[ed] the state's peremptory challenge beyond realistic scrutiny [and] converted the challenge from a device for protecting defendants into a tool for restricting the availability of the defendant's constitutional right to equal protection of the law in jury selection." 365 So.2d at 1367. The Eames concurrence opines that the right of individual dignity guaranteed by Article I, Section 3 of the Louisiana Constitution of 1974 goes beyond the protection provided by the Fourteenth Amendment, and thus beyond the Swain decision, to prohibit all discrimination because of race or religion "even though the discrimination may be reasonably related to a legitimate state objective such as a criminal prosecution." 365 So.2d at 1369.[4]
We need not decide whether the concurrence in State v. Eames is fully correct nor whether the standards set forth in that concurrence (see footnote four), should be adopted, for here simply under the test set forth in our jurisprudence, especially State v. Bias, supra, we determine that defendant has made a showing sufficient to establish prima facie discrimination in the state's exercise of its peremptory challenges. More than a bare showing of prosecutorial use of a disproportionate number of challenges against blacks or an elimination of a disproportionate number of blacks considering their number in the venire has been made in this case. There has been shown in connection with this prosecutor's use of peremptory challenges a systematic exclusion, a continual and conscious rejection of blacks. Therefore, under the procedure recognized in Bias, the burden shifted to the state to show that no discrimination simply because of race was practiced. The prosecutor made no such showing. The state therefore failed to carry its burden of proof in this regard.
For these reasons, we conclude that the defense motion to quash the jury panel based upon this prosecutor's systematic exclusion of blacks from petit juries should in this case have been sustained. Having found reversible error in defendant's assignment of error number six, we find it unnecessary to consider the remaining assignments of error.

Decree
For the foregoing reasons, the convictions and sentences of the defendant are reversed and set aside and the case is remanded for a new trial.
CONVICTIONS AND SENTENCES REVERSED; NEW TRIAL ORDERED.
MARCUS and BLANCHE, JJ., dissent and assign reasons.
MARCUS, Justice (dissenting).
I do not consider that the defendant has established a prima facie showing of systematic exclusion of blacks by the use of *755 peremptory challenges over a period of time in East Baton Rouge Parish. Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 959 (1965). Accordingly, I respectfully dissent.
BLANCHE, Justice, dissenting.
I dissent for the same reasons handed down by Justice Marcus in his dissent.
NOTES
[*] Summers, C. J., Marcus and Blanche, JJ., would grant a rehearing.
[1] Interestingly, however, in State v. Washington, No. 63,037, referred to hereinabove, Ralph Roy did testify on this subject. While asserting that he has never excluded anyone exclusively on the basis of race he admitted that he had, in the exercise of his peremptory challenges, excluded blacks in a much greater proportion than whites, not because the persons were black, but because of the history of having been black. Mr. Roy testified further as follows: ". . . [B]y and large, I have found through experience, some twenty-three years in the District Attorney's Office, that blacks, where you have a black defendant, will generally vote not guilty, in spite of the strength of the State's case. . . ."
[2] State v. Eames, 365 So.2d 1361 (La.1979); State v. Rhodes, 351 So.2d 103 (La.1977); State v. Johnson, 343 So.2d 155 (La.1977); and State v. Bennett, 341 So.2d 847 (La.1977).
[3] The exclusion of blacks by use of state peremptory challenge was an issue in Eames which the majority did not reach. Eames' conviction and sentence were reversed on other grounds.
[4] Concluding that Swain imposed an almost impossible burden on the defendant, the Eames concurrence set forth the standard believed to be mandated by the Louisiana Constitution:

A presumption should exist during the selection of a jury that individual peremptory challenges by the prosecution are being properly used. Once it becomes evident, however, that the prosecution has used a disproportionate number of challenges against members of one race, or has eliminated a disproportionate number of members of a certain race, considering the proportionate number of that race included within the venire after excuses, exemptions and removals for cause, in my opinion, a prima facie case of discrimination because of race has been established, and the burden of proof should shift to the prosecutor to show that his challenges were not exercised on the basis of race. The State may sustain its burden by offering evidence that its reasons for individual challenges were not because of race. Although the reasons need not be sufficient to ground a challenge for cause, they should appear to have been applied consistently to similarly situated jurors of other groups, and they should be reasonably relevant to the particular trial or to non-racial characteristics. If the trial court determines that the jury has been improperly selected, it should discharge the jury and select a new one according to constitutional procedures.
The standards set forth in the Eames concurrence have not been adopted by the majority of the Court.