375 So.2d 1162 (1979)
STATE of Louisiana, Appellee,
v.
Joe W. WASHINGTON, Appellant.
No. 63037.
Supreme Court of Louisiana.
June 25, 1979.
Dissenting Opinion October 29, 1979.
Alton T. Moran, Director, Allen J. Bergeron, Jr., Appellate Counsel, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Kay Kirkpatrick, Asst. Dist. Atty., for plaintiff-appellee.
TATE, Justice.
The defendant was convicted of armed robbery, La.R.S. 14:64, and sentenced to thirty-five years imprisonment at hard labor.
The principal issue of this appeal concerns whether the accused was denied trial by a jury representative of the community, because of the prosecutor's exclusion of blacks from petit jury service by the exercise of peremptory challenges as a consistent course of systematic exclusion of blacks over an extended period of time. Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); State v. Brown, 371 So.2d 751 (La.1979); State v. Bias, 354 So.2d 1330 (La.1978); State v. Trudell, 350 So.2d 658 (La.1977).
We are required to reverse, finding such systematic exclusion by the prosecutor in this case, for reasons similar to those in State v. Brown, cited above, upon a similar showing of the same prosecutor's conduct over the course of years in the use of the *1163 state's peremptory challenges to exclude blacks from petit jury service in prosecutions of blacks where a white victim was involved.

I.
In the instant case, the issue is raised as follows:
In the jury voir dire, the prosecutor briefly interrogated each prospective juror as to his or her occupation (following a few general questions as to whether they knew of any reason why they could not afford the state or the defendant a fair trial). The prosecutor then exercised his twelve peremptory challenges to excuse the first twelve black prospective jurors tendered.
The defense counsel then moved for a mistrial and to excuse all jurors so far selected, as well as for an evidentiary hearing to show a systematic exclusion of black jurors by the present prosecutor in prosecutions involving black defendants and white victims. The defendant's Assignment of Error No. 3 was taken to the denial of these motions.
Following the defendant's conviction by a 10-2 jury verdict, the defendant filed a motion for a new trial and in arrest of judgment. By this motion, the ground of systematic exclusion was again re-urged, as was the contention that the defendant was entitled to an evidentiary hearing on the issue. The trial court afforded an evidentiary hearing. It then denied the motion. Assignment 18 was taken as to this denial.

II.
At the evidentiary hearing, three attorneys and the prosecutor testified.
One attorney testified without contradiction that no data or records are maintained by which as a statistical matter it can be determined on how many instances and when the prosecutor had used his peremptory challenges on a racial basis, since the race of prospective jurors is not reflected in official records. All three attorneys testified that, in their extensive trial experience with this particular prosecutor, he systematically used his peremptory challenges, without interrogation of a particular venireman to determine his individual bias or propensities, so as to challenge black prospective jurors as they were called.
They did testify that occasionally the prosecutor would allow a black to sit, when conviction did not require a unanimous verdict and when the black venireman was of an older settled type, or when the prosecutor ran out of peremptory challengesas indeed he did in the present case, when a black juror was seated after the state's twelve peremptory challenges were exhausted through challenge of the first twelve black veniremen called.
In his testimony, the prosecutor essentially did not deny this evidence. His straightforward testimony evidenced his complete sincerity in his views, which he felt proper to a conscientious prosecutor attempting to gain a conviction of a defendant whom he would not be prosecuting unless he felt he were guilty.
The prosecutor admitted that he had "utilized a large percentage of his peremptory challenges in the exclusion of blacks", but he stated he did not do so "on the basis of color"rather "on the nature of the case, the intelligence of the juror, and on whether or not the juror could relate, not only to me as a person, but to the theory of my case."
In explaining why he used his peremptory challenges so much proportionately against blacks, he stated: "I have found through experience, some twenty-three years in the District Attorney's office, that blacks, where you have a black defendant, will generally vote not guilty, in spite of the strength of the state's case . . . I find, not without justification, particularly young blacks, they are very resentful of the white establishment." He admitted he excluded black jurors on this basis without having questioned the individual as to his beliefs or attitudes. Tr. 20, motion for a new trial.
In the instant case, he testified, he also excluded black jurors because he had to *1164 consider the problem of educating the jury as to a "principal problem" of conspiracy in proving guilt in this armed robbery case. Tr. 17. From his other comments relative to his use of the peremptory challenges on the basis of the intelligence of a prospective juror, Tr. 15, and the education of such a juror, Tr. 20, it is not unfair to characterize the prosecutor's basis for an almost automatic peremptory challenge to blacks to an assumption that many of them might not possess the intelligence and education requisite to sit on the case.

III.
Thus, aside from the objective evidence of systematic exclusion of blacks from jury service through blanket use of peremptory challenges over an extended period of time,[1] the prosecutor himself admits that, solely on the basis of race and without examination as to the individual's particular qualifications or predilections, he consistently excuses black veniremen through use of his peremptory challenges when the defendant himself is black.
Our federal and state constitutions do not permit state discrimination on the basis of race alone as a systematic and extended basis for excluding jurors from trial service by the use of peremptory challenges. The assumption that all black prospective jurors, regardless of individual qualities, are so prejudicedthat they will vote to acquit a black defendant regardless of the evidencecan as little be justified as a cause for challenge, than can be an assumption that all white jurors are so prejudiced that they will automatically vote to convict a black defendant regardless of the evidence; and, in any event, the assumption is constitutionally impermissible as a justification for the use of peremptory challenges to exclude blacks systematically from petit jury service in prosecutions involving black defendants.
As we stated recently in State v. Brown, 371 So.2d 751, 753-754 (La.1979):
"The majority of this Court has held that a defendant is not denied equal protection when the state uses peremptory challenges to exclude blacks unless there is a systematic exclusion over a period of time; we impose upon the defendant the burden of establishing a prima facie showing of such exclusion. Once a defendant has done so, the state bears the burden of showing that there was no discrimination. State v. Bias, 354 So.2d 1330 (La.1978). In Bias, the Court noted its adherence to the test announced in Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 959 (1965) in determining whether there was a systematic exclusion. In Swain, the United States Supreme Court held that a showing by the defense that peremptory challenges were used to exclude members of a minority in a particular case is not sufficient to establish a violation of the Fourteenth Amendment's Equal Protection Clause. However, where defendant can show a systematic exclusion of the minority by the state over a period of time through its use of peremptory challenges a constitutional question is presented. Swain implies that defendant must demonstrate that the prosecutor continually and consciously uses peremptory challenges to exclude blacks because of their race, requiring that the record show `with [some] acceptable degree of clarity . . . when, how often, and under what circumstances the prosecutor alone has been responsible for striking [the minority].' 380 U.S. at 224, 85 S.Ct. at 838. * * *
"[U]nder the test set forth in our jurisprudence, especially State v. Bias, supra, we determine that defendant has made a showing sufficient to establish prima facie discrimination in the state's exercise of its *1165 peremptory challenges. More than a bare showing of prosecutorial use of a disproportionate number of challenges against blacks or an elimination of a disproportionate number of blacks considering their number in the venire has been made in this case. There has been shown in connection with this prosecutor's use of peremptory challenges a systematic exclusion, a continual and conscious rejection of blacks. Therefore, under the procedure recognized in Bias, the burden shifted to the state to show that no discrimination simply because of race was practiced. The prosecutor made no such showing. The state therefore failed to carry its burden of proof in this regard."

Decree
Accordingly, we must reverse the conviction and sentence of the defendant, and remand this case for a new trial in accordance with law.
CONVICTION AND SENTENCE REVERSED; NEW TRIAL ORDERED.
SUMMERS, C. J., dissents and assigns reasons.
MARCUS, J., dissents for reasons assigned in my dissenting opinion in State v. Brown, 371 So.2d 751 (La.1979).
BLANCHE, J., dissents and assigns reasons.
BLANCHE, Justice, dissenting.
The trial counsel involved in this proceeding is a sincere, conscientious and professional prosecutor and in this writer's opinion one of the most capable criminal trial tacticians in this state. What he has done wrong in this case is to choose jurors, in his judgment, who will give the State a fair trial.
Our decision forces him in the future to include a certain percentage of blacks on every jury trial in which he participates and state for the record each time he excuses a black that he or she is being excused for some reason other than race. The percentage would have to be one which he would have to estimate to satisfy this court that he was not using racist tactics in excluding blacks. See Footnote 1 of the opinion.
If anything is wrong, it is the system, not the prosecutor. I am unable to criticize him for performing his duties in accordance with the law which gives the State twelve peremptory challenges.
For the above reasons, I respectfully dissent.
SUMMERS, Chief Justice (dissenting).
I dissent for the reasons assigned by Mr. Justice BLANCHE.
NOTES
[1] The occasional service of a black as a petit juror, such as here (when a black juror was seated after the prosecutor had exhausted his twelve peremptory challenges by excusing the first twelve blacks called), does not negate purposeful and systematic exclusion over an extended period of time. "This fact alone cannot preclude defendant from making a showing that blacks are systematically excluded in disproportionate numbers and that only a token selection of blacks has been made over a period of time." State v. Bias, 354 So.2d 1330, 1331 (La.1978).