414 So.2d 717 (1982)
STATE of Louisiana
v.
Terry HAYES.
No. 81-KA-2466.
Supreme Court of Louisiana.
May 17, 1982.
Rehearing Denied June 18, 1982.
*718 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Kay Kirkpatrick, Ralph Roy, Asst. Dist. Attys., for plaintiff-appellee.
Jeff Hollingsworth, John P. Calmes, Jr., Baton Rouge, for defendant-appellant.
CALOGERO, Justice[*].
In this appeal from his convictions on two counts of armed robbery, defendant contends that the trial judge erred in not declaring a mistrial "based upon the systematic exclusion of blacks on the jury by the Assistant District Attorney's use of his peremptory challenges," and in denying his request for a repolling of the jury as to the verdict on Count III when it returned to the courtroom after further deliberations.
The East Baton Rouge Parish District Attorney's Office filed a three count bill of information, charging defendant Terry Hayes, and one Harry Patterson, with three counts of armed robbery in violation of La.R.S. 14:64. The victims listed in the respective counts were Tony Oyefule, Daryle Oliver and Kelvin Simon. Following trial the jury acquitted defendant on Count I and convicted defendant by votes of eleven to one on each of the remaining counts.[1] The judge imposed a sentence of twenty-five *719 years at hard labor without benefit of probation, parole or suspension of sentence for each conviction with the sentences to be served concurrently. On appeal defendant argues seven assignments of error. Finding none meritorious, we affirm defendant's convictions and sentences.
The armed robberies for which defendant was convicted occurred around midnight on January 6, 1981, at a 7-11 convenience store located on Plank Road and a short time later at a National Food Store on Airline Highway. The victims of the robberies related the following.
Kevin Simon was working at the 7-11 store when Patterson and the defendant Hayes entered just before midnight on January 6, 1981. While defendant remained near the door of the store, apparently serving as a lookout, Patterson approached the cash register where Simon, the clerk, was standing. Pointing a cocked gun at Simon, Patterson demanded money. Simon began putting the money from the cash register into a paper bag. Patterson walked around the cash register and asked Simon what was in the drawers below the register. Simon responded that the drawers contained only papers. Patterson then asked whether Simon had any money and Simon parted with his billfold. Patterson handed the billfold back to Simon and instructed him to remove the money which Simon did. Simon gave the ten dollar bill from the billfold to Patterson. Defendant Hayes left his post at the door and came to the cash register. Hayes reached into the register and took out a two-dollar bill kept as "bait" money. Hayes told Patterson that it was time to leave. As the two walked toward the door, Hayes picked up Simon's jacket, inspected it and threw it down. Before leaving the store, Hayes took some gloves and some sunglasses. After the two left, Simon reported the robbery to the police. A short time later, Simon identified the two who had been apprehended by the police.
Daryle Oliver testified that he was working the cash register at the National Food Store at 5940 Airline Highway in the early morning hours of January 7, 1981, when Hayes and Patterson entered the store. The two first went to the office. Finding the office vacant, Hayes and Patterson got in the check-out line. Hayes asked Oliver for a bottle of vodka. When Oliver went to the office to get the vodka, Patterson walked with him and stuck a gun in his side. Patterson warned Oliver to be quiet and told him to open the safe. According to Oliver, Patterson was "hollering for the hundreds and the fifties." Oliver told Patterson that there were none. Patterson took the money that was in the safe and placed it in a bag he picked up from the office floor. Again telling Oliver to be quiet, Patterson stuck the gun in Oliver's side and walked him out of the store. As Patterson and Oliver were leaving the store, Hayes joined them. The three walked only a short distance when Hayes said to Patterson, "Why don't you let him go now? " Patterson agreed. Free, Oliver returned to the store and called the police. The police quickly apprehended Patterson and Hayes and took them to the store where Oliver identified them as the men who had robbed him.

ASSIGNMENT OF ERROR NO. 1
As earlier noted defendant's first assignment of error concerns the trial judge's denial of a motion for a mistrial in which defendant alleged that there was a "systematic exclusion of blacks on the jury by the Assistant District Attorney's use of his peremptory challenges."
After the jury was seated and before opening argument defense counsel moved for a mistrial, noting that eleven members of the jury were white. One member of the panel and the alternate juror were black. Counsel informed the judge that the state had exercised fourteen of its peremptory challenges against blacks. The prosecutor responded that he had accepted four blacks, but the defense had excused three of them. In the view of the prosecutor, the fact that only one black was seated on the panel was because of the defense use of three of its peremptory challenges.
*720 In State v. Brown, 371 So.2d 751, 753 (La.1979), this Court set forth the pertinent law when a defendant alleges racially discriminatory use of peremptory challenges by the state:
The majority of this Court has held that a defendant is not denied equal protection when the state uses peremptory challenges to exclude blacks unless there is a systematic exclusion over a period of time; we impose upon the defendant the burden of establishing a prima facie showing of such exclusion. Once a defendant has done so, the state bears the burden of showing that there was no discrimination. State v. Bias, 354 So.2d 1330 (La.1978). In Bias, the Court noted its adherence to the test announced in Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 959 (1965) in determining whether there was a systematic exclusion. In Swain, the United States Supreme Court held that a showing by the defense that peremptory challenges were used to exclude members of a minority in a particular case is not sufficient to establish a violation of the Fourteenth Amendment's Equal Protection Clause. However, where defendant can show a systematic exclusion of the minority by the state over a period of time through its use of peremptory challenges a constitutional question is presented. Swain implies that defendant must demonstrate that the prosecutor continually and consciously uses peremptory challenges to exclude blacks because of their race, requiring that the record show "with [some] acceptable degree of clarity ... when, how often, and under what circumstances the prosecutor alone has been responsible for striking [the minority]." 380 U.S. at 224, 85 S.Ct. at 838. (emphasis in the original)
In the case under review, defendant presented no evidence of "systematic exclusion over a period of time." The prosecutor in this case was Ralph Roy. Perhaps defendant thought that the fact that this Court has twice reversed convictions obtained by this particular prosecutor because those defendants proved he had excluded blacks from the juries in those cases and proved that he had systematically done so in the past was sufficient to establish a pattern of systematic exclusion for this prosecution. State v. Washington, 375 So.2d 1162 (La.1979); State v. Brown, supra. The trial in this case was held two years after this Court decided Washington and Brown. Defendant did not refer to those cases in argument in support of his motion. More significantly, defendant introduced no evidence to show that the prosecutor has continued a pattern of systematic exclusion of blacks from trial juries after having had convictions reversed on this ground.
The record in this case does not reflect the race of the prospective jurors. Nonetheless the state does not dispute, at oral argument or in brief, defendant's contention that the prosecutor exercised fourteen of his eighteen peremptory challenges against blacks. Additionally, we note that defendant concedes that counsel for the co-defendant Patterson excused one prospective black juror who had been accepted by the prosecutor (the juror had worked for three years in the office of the District Attorney). Two other prospective black jurors accepted by the state were excused by counsel for defendant Hayes (the husband of one of them was employed by Louisiana Training Institute, a correctional institution, and the other was a self-employed businessman). Accepting that the prosecutor exercised fourteen of eighteen peremptory challenges against black prospective jurors and that he desisted from peremptorily challenging four blacks (and one black alternate), only one of whom (plus the black alternate) survived defense challenges, there is no prima facie showing that the prosecutor's peremptory challenges of blacks were racially motivated, much less that he has done so consistently and systematically following trials in Washington and Brown. There is no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 2
Defendant's second assignment of error asserts that the trial judge erred when he *721 allowed Kevin Simon to compare the serial number of a two-dollar bill with the number written on a slip of paper kept in the cash register at the 7-11 store.
Simon testified that a two-dollar bill was kept in the cash register as "bait" money and that Hayes took this bill during the robbery. When apprehended by the police, Hayes had a two-dollar bill in his possession. The prosecutor attempted to establish that the bill in Hayes' possession was the one taken during the robbery. Simon said that a piece of paper with the serial number of the bill was taped to the bottom of the cash register drawer and that he had signed the paper the night of the robbery. When the prosecutor asked Simon to compare the number written on the paper with the serial number of the two-dollar bill taken from Hayes, defense counsel objected that the number on the paper was hearsay. Despite the fact that Simon admitted that he had not written the number on the paper and did not state that he compared the numbers before signing his name on the paper, the trial judge overruled the objection.
Hearsay is testimony in court of a statement made out of court, the statement being offered as an assertion to show the truth of the matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter. State v. Edwards, 406 So.2d 1331 (La.1981); State v. Martin, 356 So.2d 1370 (La.1978). Hearsay may also be written evidence. State v. Farrar, 374 So.2d 1204 (La.1979). The witness' testimony regarding the serial number appearing on the paper and the number's purported correlation with the number on the stolen two-dollar bill was probably hearsay. However it is virtually certain that the substantial rights of the accused were not adversely affected (see La.C.Cr.P. art. 921) in light of the evidence of defendant's guilt the state otherwise presented. The victim, Simon, positively identified defendant as one of the men who robbed him. Furthermore, when apprehended by the police, Hayes had in his possession sunglasses and gloves of the type which had been stolen from the 7-11 store.
This assignment of error is without merit.

ASSIGNMENTS OF ERROR NOS. 3 AND 4
Defendant's third and fourth assignments of error were reserved when the trial judge denied his motions for mistrial following references by policemen to another armed robbery.
Officer Dedon of the Baton Rouge Police testified that he "was standing by with Detective Brogan while he was questioning the clerk and, at this time the headquarters gave outactually the fourth armed robbery and, ..." A short time later, Officer Kistler related that his investigation involving Patterson and Hayes took him to "a 7-11 on Maplewood ... and a 7-11 at the 5100 block of Plank Road, a National Food Store on ..." Following each of the above quoted testimony, defendant objected and moved for a mistrial, contending that the witnesses had made impermissible references to another crime.
La.C.Cr.P. art. 770 mandates a mistrial, upon motion of a defendant, "when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:... another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible." (emphasis supplied)
In a recent case, this Court restated its position that a policeman is not a "court official" and therefore even if the policeman makes a reference to another crime, mistrial under La.C.Cr.P. art. 770 is not required. State v. Carter, 412 So.2d 540 (La.1982). Instead, the proper remedy would be upon request of defendant an admonition to the jury to disregard the remark. La.C.Cr.P. art. 771. In the instant case, defendant did not request an admonition for the first remark and refused the trial judge's offer of an admonition for the second comment.
Furthermore, to trigger the need for an admonition the remark must refer to *722 a crime alleged to have been committed by the defendant. Neither of the challenged comments is an unambiguous reference to crimes alleged to have been so committed. For these reasons, the trial judge did not err when he denied defendant's motions for mistrial.
These assignments of error have no merit.

ASSIGNMENT OF ERROR NO. 5
By his fifth assignment of error defendant alleges that the trial judge erred in not repolling the jury as to Count III after the jury returned from further deliberations on Count II.
When the jury returned to the courtroom following deliberation, the foreman gave the verdict sheet to the clerk who announced that the verdicts were not guilty on Count I, guilty on Count II and guilty on Count III. Defendant requested that the judge poll the jury. Both a written and an oral poll showed the following: a unanimous not guilty vote for Count I, nine votes guilty and three not guilty for Count II and an eleven to one guilty vote for Count III. When the polling on Count II was being conducted, the foreman commented "Someone's changed their mind." When the polling was completed, the judge announced that the poll confirmed a not guilty verdict on Count I and a guilty verdict on Count III. The judge stated that the jury had not reached a verdict as to Count II and asked whether the jury wished to deliberate further on this count. The foreman responded in the affirmative and the jury retired. The jury returned to the courtroom and announced a finding of guilty on Count II. Defendant requested repolling of the jury as to Count II. The poll confirmed a guilty verdict by vote of eleven to one. Defendant then requested that the jury be repolled as to Count III and the trial judge denied the request, saying that the jury had already been polled as to that count.
La.C.Cr.P. art. 812 imposes upon the judge a duty to have the clerk "poll the jury if requested by the state or defendant." The article continues in pertinent part:
If, upon polling all of the jurors, the number of jurors required by law to find a verdict answer "yes," the court shall order the clerk to record the verdict and the jury shall be discharged. If, upon polling all of the jurors, the number required to find a verdict do not answer "Yes," the jury may be remanded for further deliberation, or the court may declare a mistrial in accordance with Article 775.
The trial judge, upon defendant's request, had followed the procedure directed by article 812, and polled the jury as to Count III (it confirmed a sufficient vote for conviction) before the jury returned for further deliberation as to Count II.
As to Count II, with a vote of nine guilty and three not guilty, the jury had not reached a verdict (notwithstanding that they had earlier announced that they had) and the trial judge had the authority to retire the jury for further deliberations. After the jury returned to the courtroom following these deliberations, the trial judge correctly ordered the jury polled as to Count II because no verdict had yet been reached as to that count.
Defendant's argument essentially is that once the jury admitted to some confusion in the vote on Count II, there was a possibility that upon further deliberation (with the confusion on Count II resolved by an eleven to one guilty vote) there might have been a further resolution that the vote on Count III was nine to three or something less than the minimum ten to two required for conviction. La.C.Cr.P. art. 782. It was for this reason that he wanted a second polling on Count III.
A repolling of the jury as to Count III would surely not have been out of order. On the other hand, it was not required. The trial judge could well have concluded that at that point there was no more confusion. The foreman of the jury seemed particularly alert. During the initial polling on Count II he quickly interjected that someone had changed a vote and suggested further *723 deliberations. When he returned to the courtroom announcing that the confusion on Count II had been resolved, without volunteering anything further as to Count III, it was apparent that there was no intention on the part of the jury to change the verdict on Count III, concerning which an earlier polling had confirmed an eleven to one conviction.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 6
Defendant's sixth assignment of error is that the state did not prove venue beyond a reasonable doubt.
All trials shall take place in the parish where the offense has been committed unless venue is changed. La.Const.Art. I, § 16; La.C.Cr.P. art. 611. The state has the burden of proving proper venue beyond a reasonable doubt on the trial of the offense. La.C.Cr.P. art. 615.
Defendant correctly notes that the state did not ask the victims or other witnesses whether the offenses occurred in East Baton Rouge Parish. However, this does not necessarily mean that the state did not prove that the offenses occurred in that parish, for venue could have been shown in another manner.
When we review evidence in a criminal trial to determine whether the state proved its case beyond a reasonable doubt, we do so using the guidelines established by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). That case instructs us to consider the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found guilt beyond a reasonable doubt. Applying this standard to the allegation that the state did not prove venue, we must examine the evidence to determine whether a rational trier of fact could reasonably have concluded, beyond a reasonable doubt, that the crimes charged occurred in East Baton Rouge Parish.
Defendant argues that Airline Highway on which the National Food Store is located and Plank Road on which the 7-11 is located run beyond the limits of East Baton Rouge Parish and it is as likely that these stores are located outside that parish as they are within the parish. The state witnesses testified regarding the addresses of the stores robbed and placed these stores in their respective locations by references to nearby businesses and streets in the vicinity of the stores. Jurors must be residents of the parish in which they serve and must have lived in that parish for at least one year immediately preceding jury service. La.C.Cr.P. art. 401. Therefore, jurors are acquainted with the parish and will recognize the location of various businesses and streets. Defendants were apprehended by the Baton Rouge Police only a short distance from the stores where the robberies occurred. With this evidence before them, the jurors could reasonably have concluded, beyond a reasonable doubt, that the robberies took place in East Baton Rouge Parish.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 7
Defendant's final assignment of error is that there was insufficient evidence to convict him of the robbery of Daryle Oliver at the National Food Store.
Again, the proper of standard of review is that of Jackson v. Virginia, outlined above. Concerning defendant's complicity in the robbery at the National Food Store, the evidence shows that defendant and Patterson entered the store together and together stood in the check-out line, and that defendant requested the vodka which prompted the trip to the store office. Indeed, it was Patterson who followed the victim to the office and placed the gun at his side. However, as Patterson and the victim left the office and began walking outside the store, defendant joined them and walked with them. Further evidence of Hayes involvement is the fact that Hayes told Patterson it was time to let the victim go and Patterson complied. This evidence is sufficient to support the jury finding that defendant was guilty of armed robbery, at *724 least as a principal, beyond a reasonable doubt.
There is no merit to defendant's contention that there is insufficient evidence to sustain the guilty verdict on Count II, the robbery at the National Food Store.

Decree
For the foregoing reasons, defendant's convictions and sentences are affirmed.
AFFIRMED.
DENNIS, J., concurs with reasons.
DENNIS, Justice, concurring.
I respectfully concur.
Because the record in this case does not reflect the race of the prospective jurors which were challenged peremptorily by the state, it is impossible to determine whether the challenges were exercised in an unconstitutional manner so as to "discriminate against a person because of race." See Article 1, § 3 of the 1974 Louisiana Constitution.
NOTES
[*] Judge H. Charles Gaudin of the Court of Appeal, Fifth Circuit and Judges Israel M. Augustine, Jr., and Philip C. Ciaccio of the Court of Appeal, Fourth Circuit, participated in this decision as associate justices ad hoc, joined by Associate Justices Pascal F. Calogero, Jr., James L. Dennis, Jack Crozier Watson and Harry T. Lemmon.
[1] The jury found Patterson guilty on all counts.