489 So.2d 1299 (1986)
STATE of Louisiana
v.
Donald WAGSTER. (Two Cases).
Nos. KA 85 1234, KA 85 1235.
Court of Appeal of Louisiana, First Circuit.
May 28, 1986.
*1300 Bryan Bush, Dist. Atty., Baton Rouge by Kay Bates, Asst. Dist. Atty., for plaintiff-appellee.
Public Defenders' Office, Baton Rouge, for defendant-appellant.
Before GROVER L. COVINGTON, C.J., and LOTTINGER and CRAIN, JJ.
LOTTINGER, Judge.
Donald Wagster was charged by bill of information with one count of armed robbery in violation of La.R.S. 14:64. He pled not guilty and elected trial by jury. A jury found the defendant guilty of simple robbery (a responsive verdict) in violation of La.R.S. 14:65.[1] The state filed a multiple offender bill; and, after a hearing, the defendant was determined to be a third felony offender. The defendant received a sentence of ten years at hard labor. Subsequently, an out of time appeal was granted by the trial court.
In consolidated appeals, No. KA 85 1234 the conviction of simple robbery and NO. KA 85 1235 the multiple offender bill, defendant alleges eighteen assignments of error. Eight assignments of error were not briefed on appeal and are, therefore, considered abandoned. Uniform Rules Courts of AppealRule 2-12.4.

FACTS
The following facts were brought out at trial. On the evening of March 25, 1982, Ms. Mixon telephoned the victim, Morris *1301 Capsuto, and invited him to her apartment. She, her roommate Candace Foster, and Capsuto were to go out "partying" that evening. Ms. Mixon assured Capsuto that her live-in boyfriend, Donald Wagster, had left the apartment and would be gone for the evening.
Mr. Capsuto arrived at her apartment five or ten minutes later and saw Wagster and another man walking around the apartment grounds. Instead of entering the apartment, Capsuto drove to a nearby pay phone and called Ms. Mixon to inquire as to why Wagster had not yet left. She assured Capsuto that Wagster had left earlier and told him he must have been mistaken in his belief that he had seen Wagster.
Capsuto then drove back to Ms. Mixon's apartment and entered it, taking a seat in the living room. The young women excused themselves immediately, stating that they had to finish putting on their makeup in the bathroom. Within a minute or two, the front door opened and a man wearing a ski mask entered. He held a metal can in his hand and sprayed Capsuto with what was believed to be mace. Capsuto tried to exit the front door; but another man, also in a ski mask, held the door shut from the outside.
The man in the apartment struck Capsuto on the head with the can, cutting his scalp. He then backed Capsuto into the bedroom and demanded money. Capsuto gave him $285.00 cash. Meanwhile, the two women were standing nearby, observing the struggle. Capsuto asked them to call the police, but they made no move to do so. The man with the ski mask then asked Capsuto for his jewelry; and, when Capsuto refused, he pulled two gold chains from Capsuto's neck. Capsuto then pushed the man aside, causing him to collide with the second ski masked man (who by now had entered the apartment) and ran out of the front door, yelling that he had been robbed.
The manager's cottage was located several units away from Ms. Mixon's apartment. The manager and her husband testified that they had heard noise coming from the direction of Ms. Mixon's apartment and, shortly thereafter, saw Wagster and another man walking quickly past their cottage. The manager's husband asked Wagster if he knew what had caused the noise, and Wagster informed him that it was he (Wagster) who had been making the noise. Moments later, Mr. Capsuto appeared and informed the manager and her husband that he had been robbed. An off-duty sheriff's deputy, also a resident of the apartment complex, phoned the police. Ms. Mixon and Ms. Foster emerged from their apartment, and Capsuto informed them that he was going to have them arrested for their participation in the robbery. When the police arrived, they arrested Ms. Mixon and Ms. Foster. Wagster turned himself in to the police later that evening.

ASSIGNMENT OF ERROR NO. 1
In this assignment of error, the defendant argues that the trial court erred in overruling a defense objection to irrelevant testimony.
Immediately after the victim, Mr. Capsuto, informed Ms. Mixon and Ms. Foster that he was going to have them arrested, Ms. Mixon answered, "Oh, my, I got cocaine in the apartment." Ms. Mixon then ran back into her apartment.
At trial, Mr. Capsuto testified that Ms. Mixon made the above statement. Defense counsel immediately objected, arguing that the statement was irrelevant and immaterial. After hearing argument outside the presence of the jury, the trial court allowed the statement into evidence. The defendant argues that the trial court erred in so doing. In his brief, the defendant states, "Nothing in the trial record suggests that the state could not accurately present its case of armed robbery against appellant without having this damning innuendo brought into the jury box."
The above statement clearly indicates the possibility that Ms. Mixon possessed cocaine. Nevertheless, her statement makes no reference to the defendant, nor does the record contain anything which would connect this cocaine to the defendant. Therefore, we fail to see how the defendant was *1302 prejudiced by this statement which was made by a co-defendant.
This assignment of error is without merit.

ASSIGNMENTS ERROR NOS. 2 AND 3
In these assignments, the defendant argues that the trial court erred in sustaining objections made by the prosecution to two questions asked by defense attorneys.
The victim, Mr. Capsuto, was questioned as to how much money was taken from him during the robbery. Mr. Capsuto responded that $285.00 was the amount taken. The defense attempted to further question Mr. Capsuto as to why he knew the exact amount he was carrying. Mr. Capsuto replied that he knew the exact amount of money he was carrying because shortly before the robbery he had given some money to a friend. Mr. Capsuto stated that he counted his money at that time. The defense then asked Mr. Capsuto why he gave the money to his friend, and the state objected. Previously, another defense attorney had asked Mr. Capsuto about the type of net income that he had, and the state had also objected to this question. Both of these objections were sustained by the trial court.
The defendant argues that the trial court erred in limiting the defense's right to cross-examine the victim. The defendant argues that the line of questions he intended to ask Mr. Capsuto would have determined the amount of money that Mr. Capsuto normally carried on his person. According to the defendant, these questions would have determined whether Mr. Capsuto actually knew how much money he was carrying when robbed, or whether he was testifying about something that he was unsure about.
La.R.S. 15:494 provides as follows:
"It is not competent to impeach a witness as to collateral facts or irrelevant matter." Questions about the type of net income the victim had and the reason the victim gave some money to a friend were clearly not relevant to the issue of whether or not the defendant robbed the victim. The trial court correctly sustained the prosecution's objections to these irrelevant questions.
These assignments of error are without merit.

ASSIGNMENT OF ERROR NO. 5
The defendant argues that the trial court erred when it overruled a defense objection to hearsay testimony.
When Mr. Capsuto was robbed, the apartment manager and her husband heard a lot of noise coming from the direction of Ms. Mixon's apartment. Soon after they heard the noise, the defendant and another man walked quickly past the manager and her husband. Mr. Michael, the manager's husband, asked the defendant if he had been making the noise; and the defendant replied that he had. At the trial, Mrs. Michael testified that the defendant told her husband that he was the one making the noise. The defense objected that this testimony was inadmissible hearsay. However, the prosecution argued that it was part of the res gestae, and the trial court overruled the defendant's objection on that basis.
Res gestae is defined in La.R.S. 15:447 as follows:
Res gestae are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible in evidence.
The defendant's statement to Mr. Michael was clearly admissible as part of the res gestae. It was made only a few seconds after the robbery took place. Therefore, the trial court correctly allowed this testimony into evidence.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 6
The defendant argues that the trial court erred in sustaining the prosecution's objection *1303 to defense counsel's questioning of a witness. A day or two after he was robbed, Mr. Capsuto went to a business establishment located next door to the apartment complex. Mr. Capsuto was attempting to learn the identity of the other man who helped the defendant (Wagster) commit this robbery. The defense called a witness who was going to testify that Mr. Capsuto had threatened someone with a gun. The prosecution objected, arguing that this was an impermissible attempt to impeach Mr. Capsuto and that this line of questioning was irrelevant. The trial court sustained the prosecution's objection, ruling that, if Mr. Capsuto threatened someone, it was a collateral issue.
In his brief, the defendant argues that error occurred when the trial court refused to permit him to cross-examine a state's witness on matters to which that witness had testified previously. However, this situation did not involve the cross-examination of a state witness. The defense attempted to call its own witness to testify about Mr. Capsuto's alleged threat. The trial court correctly sustained the prosecution's objection to this irrelevant line of questioning dealing with a collateral matter. See La.R.S. 15:494; State v. Martin, 310 So.2d 544 (La.1975). The circumstances surrounding Mr. Capsuto's trip to the neighboring business establishment, even if he threatened someone while there, are clearly irrelevant in the present case.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 18
The defendant argues that the trial court erred in denying his motion for new trial. The defendant contends that he should have been granted a new trial because (1) the prosecutor used his peremptory challenges to exclude prospective black jurors from the jury panel, and (2) the evidence was insufficient to sustain the defendant's conviction.

EXCLUSION OF BLACKS
A defendant is not denied equal protection when the state uses peremptory challenges to exclude blacks from the jury unless there is a systematic exclusion over a period of time. State v. Brown, 371 So.2d 751 (La.1979). The burden is on the defendant to establish a prima facie showing of such exclusion. State v. Williams, 442 So.2d 740 (La.App. 1st Cir.1983). A showing by the defense that peremptory challenges were used to exclude blacks in a particular case is not sufficient to establish a violation of the Fourteenth Amendment Equal Protection Clause. Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965).[2]
In the instant case, the victim and all of the defendants were white. Therefore, the defendant does not make an equal protection argument; rather, this claim is based on the defendant's right to due process of law. Even though the defendant is white, he does have standing to challenge the systematic exclusion of black jurors. Peters v. Kiff, 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972).
At the hearing on the motion for new trial, the defendant elicited testimony from several witnesses in an attempt to prove systematic exclusion of blacks by the prosecutor in this case, Ralph Roy, who is now deceased. After thoroughly reviewing the testimony given at the hearing, the trial court concluded that the defense had not *1304 established a prima facie showing of such exclusion. We agree with the trial court's finding.
In State v. Brown, supra, and State v. Washington, 375 So.2d 1162 (La.1979), the Supreme Court found that the prosecutor in the instant case, Ralph Roy, had systematically excluded blacks from jury service by use of peremptory challenges over an extended period of time. In State v. Hayes, 414 So.2d 717 (La.1982), this issue was again raised before the Supreme Court in a case which was prosecuted by Ralph Roy. However, unlike the Brown, supra, and Washington, supra, cases, the Hayes, supra, case was not reversed because the defendant failed to make a prima facie showing of systematic exclusion of black jurors. In Hayes, the Louisiana Supreme Court stated:
In the case under review, defendant presented no evidence of "systematic exclusion over a period of time." The prosecutor in this case was Ralph Roy. Perhaps defendant thought that the fact that this Court has twice reversed convictions obtained by this particular prosecutor because those defendants proved he had excluded blacks from the juries in those cases and proved that he had systematically done so in the past was sufficient to establish a pattern of systematic exclusion for this prosecution.... there is no prima facie showing that the prosecutor's peremptory challenges of blacks were racially motivated, much less that he has done so consistently and systematically following trials in Washington and Brown. 414 So.2d at 720.
From the above quoted language, it is obvious that the defense cannot rely on past conduct alone in order to make a prima facie showing that Ralph Roy has "consistently and systematically" used peremptory challenges to exclude potential black jurors. In the instant case, the defense produced seven witnesses at the hearing on the motion for a new trial. The testimony of Mr. Williams dealt with cases which pre-dated the Brown, supra, and Washington, supra, cases. In light of the Supreme Court's announcement in Hayes, supra, this testimony was of little help to the defendant. The testimony of Mr. Unglesby was of a general nature and did not point to any specific cases in which Ralph Roy had exercised a disproportionate number of peremptory challenges against prospective black jurors. Mr. Marabella testified that his practice as an assistant district attorney from 1973 until 1976 was to exclude blacks from jury panels by the use of peremptory challenges. However, he testified that this was "not stated policy" for prosecutors in the 19th Judicial District. Furthermore, in two recent cases in which he had opposed Mr. Roy, Mr. Marabella could not specifically remember the number of peremptory challenges used against prospective black jurors, but he did recall that there were more than two blacks on the jury panel in both of those cases.
On the other hand, Ms. Wheeler testified that, in a recent trial, Mr. Roy had exercised ten peremptory challenges against blacks and none against whites. She testified that there were two blacks on the final jury panel in that case, but she did not recall if the defense challenged any prospective black jurors. Ms. Fournet testified that, at a trial approximately two years before the instant case was tried, Mr. Roy had exercised eleven peremptory challenges, all against prospective black jurors. However, there was no testimony as to the number of blacks on the final jury panel in that case.
Ms. Foreman, a staff writer for the Morning Advocate, testified that she had been covering criminal cases in the 19th Judicial District for approximately seven years. However, in testing her memory as to the final jury composition in specific cases, the trial court noted approximately ten recent cases tried in his court by Mr. Roy in which three or more blacks sat on the final jury panel. Of these ten or so recent cases noted by the trial court, Ms. Foreman could only recall the final jury composition in one or two of those cases.
In the instant case, the record reflects that the jury venire consisted of forty-eight prospective jurors. The race of these jurors is unknown. Forty of these prospective jurors were examined during voir dire. The record reflects that the state and the *1305 defense exercised an equal number of peremptory challenges (thirteen). Additionally, the defense challenged a prospective juror for cause. At the hearing on the motion for a new trial, the defense established that twelve of the thirteen peremptory challenges exercised by Mr. Roy were against blacks. However, Mr. Carpenter, who represented the defendant at trial, testified that he did not recall the final composition of the jury. Mr. Carpenter also testified that the defense challenged some black jurors. Since the state was required to exercise its challenges first, obviously some prospective black jurors were accepted by the state but rejected by the defense.
In State v. Williams, 445 So.2d 1171, 1177 (La.1984), the Louisiana Supreme Court noted that, in requiring a prima facie showing of systematic exclusion of blacks over a period of time, "the defendant is saddled with a difficult burden." After carefully considering the testimony taken during the hearing on the motion for new trial, the trial court concluded that the defendant had failed to establish a prima facie showing of systematic exclusion of black prospective jurors by Mr. Ralph Roy. Reviewing the testimony taken at the hearing demonstrates that Mr. Roy exercised a disproportionate number of peremptory challenges against black prospective jurors in some trials. However, much of the testimony was of a general nature. Viewed as a whole, we find that the evidence adduced at the hearing failed to prove that Ralph Roy had consistently and systematically exercised peremptory challenges to exclude prospective black jurors. The trial court correctly denied the defendant's motion for new trial on this basis.

SUFFICIENCY OF EVIDENCE
At the hearing on the motion for new trial, the defendant also argued that the evidence was insufficient to support his conviction. In his brief, the defendant contends that the state failed to prove the taking of anything of value from Mr. Capsuto. The defendant also argues that the evidence at trial was insufficient to prove his identity beyond a reasonable doubt.[3]
The standard of review for the sufficiency of evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. State v. Byrd, 385 So.2d 248 (La.1980).
The victim of this robbery, Mr. Capsuto, testified that two gold chains worth approximately $1,000.00 each, were pulled from his neck in this robbery and never recovered. Mr. Capsuto also testified that he gave the assailants $285.00 cash. Clearly, the evidence is sufficient to prove the taking of something of value from the victim.
The defendant also argues that his identity was not sufficiently proven. Mr. Capsuto testified that, although the assailants wore ski masks, he was able to see a moustache through the mask of one of the assailants (the defendant). He testified that he had known the defendant for over a year and that he recognized the defendant from his size, height, and from the way he walked. The defendant was also positively identified by Mr. Michael, the apartment manager's husband, a few seconds after loud noises were heard coming from the direction of Ms. Mixon's and Ms. Foster's apartment. The defendant was walking very fast as he told Mr. Michael that he (the defendant) had been making the noise.
Immediately after he was robbed, Mr. Capsuto concluded that he had been lured into a trap by Ms. Mixon and Ms. Foster. The evidence reflects that the defendant was Ms. Mixon's boyfriend. The fact that Mr. Capsuto observed the defendant standing outside when he arrived the first time indicates that the girls were lying to him about the defendant having left.
*1306 We are convinced beyond a reasonable doubt that the defendant was involved in a conspiracy with Ms. Mixon and Ms. Foster to rob Mr. Capsuto. Viewing the evidence in the light most favorable to the prosecution, we find that the defendant was sufficiently identified by Mr. Capsuto and Mr. Michael as being one of the two assailants who attacked and robbed Mr. Capsuto. The trial court correctly denied the defendant's motion for a new trial on this basis.
For the above reasons, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 7
In this assignment, the defendant argues that the trial court erred in admitting into evidence a certified copy of the defendant's rap sheet.
After the defendant was convicted of the instant offense, the state filed a multiple offender bill. At the habitual offender hearing, the state introduced a certified copy of the defendant's rap sheet into evidence. The defendant objected, arguing that the rap sheet was a hearsay document. In brief, the defendant argues that, in order to introduce the rap sheet into evidence, it was necessary to prove that the document was admissible under the business records exception to the hearsay rule, citing State v. Smith, 447 So.2d 565 (La. App. 1st Cir.1984). The defendant also argues that the rap sheet contained irrelevant and prejudicial information about him.
It is important to note that the defendant does not contest the fact that the rap sheet was a certified copy. Furthermore, the defendant does not argue that the certified copy of the rap sheet failed to meet the requirements of La.R.S. 15:585. Since the defendant does not contest the fact that the rap sheet was properly certified, his argument must necessarily fail because La.R.S. 15:585 provides that a properly certified rap sheet "shall be received as prima facie proof of its contents...." Therefore, it is not necessary to prove that the rap sheet was admissible under the business records exception to the hearsay rule. State v. Smith, supra, is distinguished from the instant case, because in Smith, the rap sheet was not certified as a record of the Louisiana Bureau of Criminal Identification and Information pursuant to La.R.S. 15:585.
While it is true that the rap sheet contained information which was not relevant to the habitual offender hearing, this objection is meritless. The defendant's rap sheet contained three previous felony convictions, in addition to the defendant's felony conviction in the instant case. However, the trial court disregarded one of these prior felony convictions, ruling that the Boykin colloquy was defective. Since the trial court determined that the defendant was only a third felony offender at the conclusion of the habitual offender hearing, it is obvious that the trial court only considered relevant information in making his determination. The defendant failed to establish how he was prejudiced by this irrelevant information.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 8
The defendant argues that the trial court erred in admitting fingerprint cards into evidence during the habitual offender hearing. Again, the defendant's argument that this evidence was improperly admitted is based on the fact that it did not come under the business records exception to the hearsay rule. The defendant does not argue that the fingerprint cards were not certified copies. Nor does he argue that the fingerprint cards were not in compliance with La.R.S. 15:585. Therefore, under La.R.S. 15:585, the fingerprint cards were considered prima facie proof of their contents, and it was unnecessary to admit them under the business records exception to the hearsay rule.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 15[4]
At the hearing on the multiple offender bill, the state introduced evidence that the *1307 defendant had three prior felony convictions, two of which were based on guilty pleas. At the hearing, the defendant argued that the two prior convictions based on guilty pleas should not be considered for enhancement purposes because the guilty pleas were made without full warning of the constitutional rights that the defendant was waiving. After examining both guilty plea colloquies, the trial court ruled that one was deficient and would not be considered for enhancement purposes. The trial court ruled that the other guilty plea colloquy indicated that the defendant had been sufficiently advised of his constitutional rights and, therefore, this conviction would be considered in enhancing the defendant's sentence as a multiple offender. In this assignment of error, the defendant contends that both of the guilty pleas were made without sufficient warning of his constitutional rights and that the trial court erred in not finding the other one defective.
On May 31, 1977, before Judge Elmo Lear, the defendant entered a guilty plea to the charge of possession of methaqualone (quaaludes) [Bill of information no. 1-77-780]. The defendant now argues that this guilty plea was not knowingly and intelligently made. Specifically, the defendant contends that Judge Lear did not adequately explain the elements of the crime charged when accepting the defendant's guilty plea. He also argues that Judge Lear failed to inform him of the consequence that this guilty plea might be used to enhance a future conviction and sentence under the Multiple Offender Statute.
In Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the United States Supreme Court held the right against self-incrimination, the right of trial by jury, and the right to confront one's accusers must be expressly waived before a guilty plea can be accepted in a state criminal proceeding.
In this assignment, the defendant does not specifically argue how or why his waiver of rights during the guilty plea colloquy was insufficient. The defendant merely makes a general argument that he was not fully informed of the constitutional rights which he was waiving by entering a guilty plea and that he was not informed of the elements of the crime with which he was charged.
The transcript of this Boykin examination indicates that the defendant was informed of the elements of the crime with which he was charged. The defendant was informed by Judge Lear that he was charged with possession of quaaludes on a particular date. Judge Lear then read the statute and the penalty provision to the defendant. Judge Lear also explained to the defendant the constitutional rights that he was waiving (the right against self-incrimination, the right to trial by jury, and the right to confrontation), as required by Boykin, supra.
The defendant also argues that his guilty plea was deficient because he was not informed of the possibility of subsequently enhanced sentencing under the multiple offender statute. The trial court does not have to advise the defendant that the conviction resulting from a guilty plea could be used in a future multiple offender charge. See State v. Jackson, 362 So.2d 1082 (La.1978). See also, State v. Muse, 367 So.2d 789 (La.1979).
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 17
In this assignment of error, the defendant argues that his sentence of ten years at hard labor is excessive.
The Code of Criminal Procedure sets forth items which must be considered by the trial court before passing sentence. La.Code Crim. P. art. 894.1. The trial *1308 court need not recite the entire checklist of article 894.1, but the record must reflect that it adequately considered the guidelines. State v. Davis, 448 So.2d 645 (La. 1984). In light of the criteria expressed by article 894.1, a review of the individual excessiveness should consider the circumstances of the crime and the trial court's stated reasons and factual basis for its sentencing decision. State v. Cox, 369 So.2d 118 (La.1979).
Reviewing the article 894.1 guidelines, the sentencing record reflects that the trial court found several aggravating circumstances. Referring to the presentence investigation report and the defendant's multiple offender hearing, the trial court noted the defendant's considerable criminal record. The trial court felt that the defendant was in need of correctional treatment and that any lesser sentence would deprecate the seriousness of the offense.
Even though a sentence falls within statutory limits, it may be excessive. State v. Sepulvado, 367 So.2d 762 (La.1979). However, the trial court has wide discretion in the imposition of sentences, and a sentence within statutory limits will not be set aside in the absence a manifest abuse of discretion. State v. Wardlow, 448 So.2d 257 (La.App. 1st Cir.1984).
The maximum sentence for this offense was fourteen years. The trial court specifically stated that, had it not been for certain mitigating factors, the court would have imposed the maximum sentence on the defendant. The trial court satisifed the criteria set forth in La.Code Crim.P. art. 894.1. The record reflects that the trial court considered both aggravating and mitigating circumstances in deciding upon this sentence. In sentencing the defendant, a third felony offender, to ten years at hard labor for this offense, we cannot say under the circumstances that this sentence is excessive. Therefore, this assignment of error is without merit.
Therefore, the convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] Two co-defendants, Kelli Mixon and Candace Foster, were also charged, tried and convicted with the defendant. However, they are not parties to this appeal.
[2] In rendering this opinion, we are aware of the recent United States Supreme Court decision in Batson v. Kentucky, ___ U.S. ___, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). However, in agreement with the concurring opinions of Justices White and O'Connor, and the dissenting opinion of Chief Justice Burger (joined by Justice Rehnquist), we conclude that the United States Supreme Court did not intend its decision in Batson v. Kentucky, supra, to be given a retroactive application. Furthermore, even if Batson, supra, (which was decided on Fourteenth Amendment Equal Protection grounds) does apply retroactively, it is not applicable to the instant case. Herein, a white defendant brings a Sixth Amendment Due Process challenge to the prosecutions's exclusion of blacks from the petit jury through the use of peremptory challenges. In Batson, supra, however, the United States Supreme Court declined to address Sixth Amendement issues. See, Batson at fn. 4.
[3] Insufficient evidence cannot be the basis for a new trial. State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983). If the evidence supporting a conviction is insufficient, the defendant is entitled to a post verdict judgment of acquittal. La.C.Code Crim.P. art. 821. However, the insufficiency of the evidence supporting a conviction may be raised as an assignment of error on appeal.
[4] The defendant's argument, that a prior conviction based on a guilty plea should not be considered for multiple offender enhancement purposes because the guilty plea did not indicate a knowing and intelligent waiver of the defendant's constitutional rights, is treated in brief as assignment of error no. 12. Yet, assignment of error no. 12 in the record deals with another issue. So the argument in defendant's brief listed as assignment of error no. 12 will be treated under assignment of error no. 15.