664 So.2d 141 (1995)
STATE of Louisiana
v.
Donald Ray JOHNSON.
No. 94 KA 1561.
Court of Appeal of Louisiana, First Circuit.
October 6, 1995.
Rehearing Denied November 15, 1995.
*142 Clayton M. Perkins, Jr., St. Francisville, for Appellant Donald Ray Johnson.
George H. Ware, Jr., Clinton, for Appellee State of Louisiana.
*143 Before CARTER and PITCHER, JJ., and CRAIN, J. Pro Tem.[1]
PITCHER, Judge.
Donald Ray Johnson was charged by bill of information with attempted first degree murder, a violation of LSA-R.S. 14:27 and 14:30. He pled not guilty and, after trial by jury, was convicted as charged. The state filed a petition charging defendant as a fourth felony habitual offender. See LSA-R.S. 15:529.1. After a hearing, the trial court found defendant to be a third felony habitual offender and sentenced him to serve a term of sixty years imprisonment at hard labor, with credit for time served. Defendant has appealed, urging four assignments of error.

FACTS
On July 14, 1993, Johnny Beauchamp returned to his residence in Clinton, after having been out of town on business. It was shortly after noon when he entered the front door. In a rush to go to the bathroom, he immediately walked down the center hall. As Beauchamp passed the master bedroom, he noticed movement and thought it was the woman who regularly cleaned his home. As he reached the next door, an intruder came out of the master bedroom and fired a shot, which went over Beauchamp's head. According to Beauchamp, the gun was aimed in his direction when it was fired. The man then ordered Beauchamp to lie facedown on the floor. Concerned about being shot in the back, Beauchamp grabbed the man's arm in an attempt to gain control of the weapon. The man hit Beauchamp on the head with the pistol two or three times and knocked him to the floor. The man continued to hit Beauchamp on the head with the pistol. Eventually, Beauchamp was on his back, attempting to kick the intruder in the groin. When Beauchamp noticed the barrel had broken off the gun, he no longer was concerned about being shot. Beauchamp also noticed that the man's finger was cut badly during the altercation. The man left the house through the front door.
A woman who was standing on a porch across the street from Beauchamp's residence testified that she heard the shot and thought somebody was shooting at squirrels. Later, she noticed a heavyset black man running down the street. Because she did not see the man's face, she was unable to identify him. Ernest Bell was driving in the area at about 12:30 p.m. when he saw defendant going in a "fast trot." Bell had known defendant for about seventeen years. When defendant waved at him to stop, Bell stopped and gave defendant a ride to the apartment building where defendant lived. During the trip, Bell noticed that defendant's hand was bleeding and that defendant had taken off his shirt to wrap his hand. When Bell asked defendant what had happened, defendant did not reply.
When the police arrived at Beauchamp's residence, Beauchamp described the attacker as being a heavyset black male. The barrel of the pistol was found in a bedroom, and the remainder of the pistol was located in a neighbor's yard. Beauchamp normally kept the pistol in the bureau drawer next to his bed.
Beauchamp's wife returned to the house after being called about the offense. She took her husband to the hospital, where he received 59 stitches in his head and treatment for a broken hand. According to her testimony, she had left the residence at about noon, shortly before her husband returned from his trip. When she returned to her house, she found that the door to her jewelry box had been opened and two necklaces were misplaced in the box. She also noticed that her house was a mess and the door on a chifforobe was broken.
During the trial, Mr. Beauchamp identified defendant as being the intruder. Mr. Beauchamp also testified that after he received stitches, he went to the jail to find out the name of the intruder. While at the jail, he saw defendant and recognized him as being the intruder. He also indicated that he saw defendant standing outside the courthouse on *144 a later date when defendant had been brought to the courthouse for arraignment.

INSUFFICIENT EVIDENCE
In the first assignment of error, defendant asserts the evidence was insufficient and the court erred when it denied his motion for post verdict judgment of acquittal. On appeal, defendant includes only a brief general argument on this assignment. However, it is apparent from the trial transcript that the defense was mistaken identity.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude the state proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt. See LSA-C.Cr.P. art. 821; State v. Johnson, 461 So.2d 673, 674 (La.App. 1st Cir.1984). Where the key issue raised by the defense is the defendant's identification as the perpetrator, rather than whether or not the crime was committed, the state is required to negate any reasonable probability of misidentification. State v. Richardson, 459 So.2d 31, 38 (La.App. 1st Cir.1984). The testimony of a victim is sufficient to establish the elements of an offense. State v. Creel, 540 So.2d 511, 514 (La.App. 1st Cir.), writ denied, 546 So.2d 169 (La.1989).
After reviewing the trial testimony and evidence, we conclude defendant's identification as the perpetrator was established beyond a reasonable doubt. Mr. Beauchamp identified defendant in court and said he was "sure" of the identification. Although Beauchamp did not know defendant before the offense and saw his assailant for only two or three minutes during the attack, he looked directly at the assailant's face when he made the decision not to lie down as instructed; and he watched the man's face carefully because of the gun. After the offense, Beauchamp told the officers at the scene that he would be able to identify the heavyset black male who had attacked him. Once he secured medical treatment, Beauchamp went to the jail to check on the status of the case and find out the name of his attacker. While Beauchamp was there, he happened to see defendant through a window sitting in an office; and he remarked to some officers that he had noticed his attacker. Beauchamp testified that he also recognized defendant when he saw him on a third occasion. When Beauchamp came to the courthouse to get some forms, he saw defendant standing outside the courthouse with five or six other prisoners. According to Beauchamp, defendant had been brought to the courthouse that date for arraignment.
Beauchamp's identification of defendant was corroborated by the testimony of Ernest Bell and Jesse Flowers and by the physical evidence. The victim testified that, during the offense, his attacker's finger was cut. Bell testified that when he picked up defendant near the victim's house and gave him a ride, one of defendant's hands was bloody, and defendant did not reply when Bell asked him what had happened. When defendant was arrested, he had a fresh cut on his right index finger which started bleeding. Flowers lived downstairs from defendant in the same apartment building. Flowers testified that he had known defendant for about twenty years and had seen defendant wearing a cap like one found by the police in Flowers' storage room on the afternoon of the offense. Defendant lived with his aunt, who identified shorts found in the storage room as being the shorts defendant wore that morning. After being accepted as an expert in the field of forensic serology, the scientist who tested the clothing testified that the type of blood found on the clothing was consistent with the victim's blood type and was not defendant's blood type.
To rebut the state's case, defendant introduced alibi evidence that he was at home when the offense occurred. Defendant testified that other than leaving his apartment to visit his sister for about forty-five minutes, he was at home that day and was taking a nap at the time of the offense. His sister testified that defendant visited her from about 10:00 a.m. until 10:45 a.m. Defendant's aunt testified that defendant returned to the apartment at about 10:30 or 10:45 a.m. and took a nap after showering. *145 However, the aunt said defendant could have made it to the victim's house and back in twenty minutes, and she admitted she was not sure exactly when defendant returned to the apartment. Also, defendant's own testimony was impeached with his record of criminal convictions. It is well-settled that the trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d at 38. Despite the alibi evidence, the state negated any reasonable probability of misidentification and the jury's decision to convict was rational. The assignment of error lacks merit.

DENIAL OF MOTION TO SUPPRESS IDENTIFICATION
In the next two assignments of error, defendant argues the victim's in-court identification of defendant as the attacker was the result of suggestive pretrial identifications. He specifically asserts, in the second assignment, that the court erred when it denied the motion to suppress identification and, in the third assignment, that the court erred when it denied the motion for mistrial.
Mr. Beauchamp testified that, in addition to viewing defendant during the offense, he saw defendant on two other occasions prior to the trial. About two or three hours after the incident (and after he had received medical treatment), Beauchamp went to the jail to find out the name of the attacker. While he was there, he saw defendant sitting in a room; and he told an officer he recognized defendant as being the attacker. Beauchamp also saw defendant on the date of the arraignment. Beauchamp had gone to the courthouse to get some papers, and he saw defendant standing outside the courthouse with about five or six other prisoners (all wearing orange prisoner suits).
Prior to trial, defendant filed a motion to suppress the identification. In a supplemental motion which was filed on the date of the trial, defendant alleged Beauchamp's pretrial identification of defendant at the jail was improper and suggestive. During the trial, when Beauchamp first identified defendant in court, defendant objected on the ground the foundation for personal identification had not been laid. After the question and answer were repeated, defendant did not object on this ground any further. When defendant finished his cross-examination of Beauchamp, he moved for a mistrial and asked that the jury be admonished because of the suggestive identification. The court denied the mistrial request. Near the conclusion of the state's case, the court denied the motion to suppress, explaining it had found no evidence to support defendant's claims that law enforcement officers contrived to put Beauchamp in contact with defendant.
The defendant has the burden of proof on a motion to suppress an out-of-court identification. See LSA-C.Cr.P. art. 703(D). In order to suppress an identification, defendant must prove (1) that the identification was suggestive, and (2) that there was a likelihood of misidentification in the identification procedure. An identification procedure is unduly suggestive if, during the procedure, a witness's attention is focused on the defendant. State v. Hawkins, 572 So.2d 108, 112 (La.App. 1st Cir.1990). When immediate and definite identifications result from inadvertent meetings between the victim and the suspect, and there is no indication of impropriety or suggestiveness, an out-of-court identification will be found both reliable and admissible. State v. Gabriel, 450 So.2d 611, 618 n. 15 (La.1984). See also State v. Loyd, 425 So.2d 710, 713 (La.1982). A trial court's determination of the admissibility of an identification should be accorded great weight and will not be disturbed on appeal unless the evidence reveals an abuse of discretion. Hawkins, 572 So.2d at 112-13.
The fact that defendant was observed by the victim twice after the offense does not render the in-court identification inadmissible, although those circumstances are factors which defendant presented to the jury to assist them in weighing the testimony of the in-court identification. Contrary to defendant's assertion on appeal that the police made defendant "accidentally" available to the victim for the two pretrial identifications, neither instance was arranged by law enforcement officers. Instead, they were the result of inadvertent and chance encounters. See State v. Guillot, 526 So.2d 352, 355 (La. App. 4th Cir.1988), writs denied, 531 So.2d *146 471 & 481 (La.1988). On neither occasion did anyone draw any attention to defendant or to his location. As our discussion in connection with the previous assignment makes clear, the state presented substantial evidence identifying defendant as the person who attempted to murder the victim and supporting the victim's in-court identification of defendant. Defendant had ample opportunity to cross-examine the victim extensively, a sufficient remedy to any suggestion inherent in the identification process. See State v. Drew, 360 So.2d 500, 516 (La.1978), cert. denied, 439 U.S. 1059, 99 S.Ct. 820, 59 L.Ed.2d 25 (1979).
Hence, the court did not err in denying defendant's motion to suppress the in-court identification and motion for mistrial. These assignments lack merit.

ADJUDICATION AS HABITUAL OFFENDER
In the fourth assignment of error, defendant asserts two main arguments in support of his claim that his adjudication as a third felony habitual offender was improper. First, he argues that because he was not advised of the possibility of future enhancement when he pled guilty in the two previous felony convictions, those convictions cannot be used as predicate felony convictions for purposes of a habitual offender adjudication. Next, he maintains that even if his first argument is rejected, he should have been adjudicated only a second felony offender because he was sentenced on the same date for the two prior felony convictions.
Although the habitual offender bill charged defendant as a fourth felony habitual offender, at the habitual offender hearing the state introduced evidence of only two prior convictions. Defendant committed the offense of simple robbery on December 9, 1988, and pled guilty to the offense on April 20, 1989. On June 8, 1989 (before sentencing on the simple robbery conviction), he committed the offense of felon carrying a concealed weapon (a violation of LSA-R.S. 14:95.1) and pled guilty on September 11, 1989. On the date of this plea, the court sentenced him for both convictions. The trial court did not advise defendant at either of the two guilty pleas that the pleas could be used to support a habitual offender charge in the event of a subsequent felony conviction. At the conclusion of the habitual offender hearing, defense counsel argued that neither guilty plea could be used as a predicate felony conviction because defendant had not been so advised. The court rejected the argument and found defendant to be a third felony habitual offender. Following the hearing, defendant filed a motion for reconsideration of habitual offender status, in which he argued the two convictions should be considered as only one conviction since he was sentenced on the same date. The court denied the motion and sentenced defendant as a third felony habitual offender.
A trial court, in accepting a felony guilty plea, is not required to advise the defendant that the conviction may be used as a basis for the filing of a future multiple offender bill. State v. Nuccio, 454 So.2d 93, 104 (La.1984). Thus, defendant's first argument is without merit. See State v. Wagster, 489 So.2d 1299, 1307 (La.App. 1st Cir.), writ denied, 493 So.2d 1218 (La.1986).[2]
We next address defendant's claim that the sequencing for the two prior convictions was improper. The Habitual Offender Law provides that "[a]ny person who, after having been convicted within this state of a felony... thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as [specified in the habitual offender statute]." LSA-R.S. 15:529.1(A) (prior to renumbering by 1994 La.Acts, 3rd Ex.Sess., No. 23, § 1). As the Louisiana Supreme Court indicated in State ex rel. Mims v. Butler, 601 So.2d 649 (La. *147 1992) (on rehearing): "The sequence necessary for enhancement of sentencing under the Habitual Offender Law is commission of crime, or crimes, followed by conviction (equals a first offender), then commission of another crime, or crimes, followed by conviction (equals a second offender), and so forth." 601 So.2d at 651 n. 4.
To resolve the issue raised by defendant in this argument, we must determine the meaning of the word "convicted", which is contained in the portion of the habitual offender statute quoted above. In State v. Lewis, 564 So.2d 765 (La.App. 2d Cir.1990), the defendant was adjudicated a third felony habitual offender. When the defendant in Lewis committed his most recent offense, the second predicate felony conviction was pending on appeal. In applying the definition of "conviction" to the habitual offender statute (LSA-R.S. 15:529.1), the Second Circuit held that the prior conviction must be "final" on appeal before the subsequent offense is committed. 564 So.2d at 769. Because the second felony was not final, the court vacated the habitual offender adjudication and remanded for resentencing as a second felony habitual offender.
The court in Lewis acknowledged that the word "convicted" in the Code of Criminal Procedure "means adjudicated guilty after a plea or after trial on the merits." LSA-C.Cr.P. art. 934(3). However, the court chose instead to rely upon the definition used in State v. Gani, 157 La. 231, 102 So. 318 (1924), a case in which the Supreme Court, in reversing a conviction for second offense liquor violation, held that the defendant could not be convicted as a second offender because the judgment affirming the conviction on the first offense was not final (as the delays for rehearing had not expired) when the second trial occurred. Both the Third and Fourth Circuits have followed the position taken by the Second Circuit in Lewis, without discussion. State v. Brass, 93-2482 (La.App. 4th Cir. 2/11/94), 632 So.2d 819; State v. Townley, 627 So.2d 252 (La.App. 3d Cir.1993), writ denied, 93-3011 (La. 2/4/94), 633 So.2d 169. The facts in Brass were similar to those of the instant situation as the subsequent offense occurred prior to sentencing but after conviction of the predicate offense.
For the reasons which follow, we decline to adopt the definition in Lewis, Brass, and Townley. We find persuasive the reasoning of the dissent in Townley, which concluded the result in Gani was not supported by the prevailing law or jurisprudence. 627 So.2d at 253 (Saunders, J., dissenting). We also believe the court in Lewis misread Gani to require finality of the prior conviction before the subsequent offense is committed. However, Gani merely requires finality of the former conviction "at least at the time when the second conviction is had." 102 So. at 319 (emphasis in original). The language of the habitual offender statutes itself (a statute which was not at issue in Gani) does not support the position taken in Lewis. The statute repeatedly distinguishes between a conviction and a sentence, and it is apparent the statute contemplates the definition contained in Article 934(3). In Lewis, the court indicated that its decision was in accordance with the rule followed in the majority of American jurisdictions. However, recently, the New Jersey Supreme Court extensively reviewed this issue and found that the majority of courts in other jurisdictions construing the term "conviction" have concluded that a pending appeal on a prior conviction does not preclude its use for enhancement of sentence. State of New Jersey v. Haliski, 140 N.J. 1, 12-14, 656 A.2d 1246, 1252-53 (N.J.1995). We agree with that court that the definition used in the minority of the cases, including Lewis, frustrates the legislative purpose underlying habitual offender statutes and, as a practical matter, results in many recent felony convictions effectively being exempted from operation of the statute. We also notice that the Second Circuit has refused to rely on Gani in defining "convicted" for purposes of the felon in possession of a firearm statute (LSA-R.S. 14:95.1) and has held that a felony conviction pending on appeal can serve as a 14:95.1 predicate. State v. Bailey, 461 So.2d 336, 339 (La.App. 2nd Cir.1984). See also State v. Washington, 621 So.2d 114, 118-19 (La.App. 2nd Cir.), writ denied, 626 So.2d 1177 (La. 1993) (declines to overrule Bailey).
*148 Accordingly, we hold that defendant's conviction for simple robbery may be used as a predicate felony, although sentence was not yet imposed when the second felony was committed. We thus reject defendant's second argument, and this assignment of error is without merit.
CONVICTION, HABITUAL OFFENDER ADJUDICATION AND SENTENCE AFFIRMED.
NOTES
[1] Judge Hillary Crain, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] We also notice that in raising this issue at the conclusion of the habitual offender hearing, defendant did not follow the procedural requirements of LSA-R.S. 15:529.1(D)(1) (as amended by 1993 La.Acts, No. 896), which provides that a defendant charged as an habitual offender who claims one of the predicate convictions was unconstitutionally obtained must file a written response to the habitual offender petition (within fifteen days of the habitual offender arraignment) setting forth the claim, and the factual basis therefor, with particularity. See also State v. Shelton, 621 So.2d 769, 779-80 (La.1993).